### ALGER–FOWLER COMPANY v. JOHN L. TRACY.[1]

July 6, 1906.

Nos. 14,716—(134).

**Sales—Breach of Contract.**

The general rule as to damages for a breach of a contract for the sale of goods is the difference between the contract price and the market price at the time and place when and where they ought to have been delivered.

**Action for Damages.**

Where one party to an executory contract before performance is due expressly renounces the contract and gives notice that he will not perform it, his adversary, if he so elects, may treat the renunciation as a breach of the contract and at once bring an action for damages.

**Election.**

A party desiring so to treat the renunciation of an executory contract as a breach must within a reasonable time elect so to do.

[1] Reported in 107 N. W. 1124.

Appeal by plaintiff from a judgment of the district court for Hennepin county, entered pursuant to the findings and order of Holt, J. Affirmed.

*Keith, Evans, Thompson & Fairchild,* for appellant.

*M. H. Boutelle* and *N. H. Chase,* for respondent.

START, C. J.

Action, commenced March 2, 1905, to recover from the defendant an alleged balance of $5,958.12 as money had and received to the plaintiff's use. The answer alleged that the defendant had accounted to the plaintiff for all moneys received from it, except the sum of $130.62, and set up a counterclaim in the sum of $856.25. The reply put in issue the allegations as to the counterclaim and new matter in the answer. The cause was tried by the court without a jury, and as a conclusion of law based on the facts found, it directed judgment in favor of the defendant, that the plaintiff take nothing by its action, and that the defendant recover judgment on his counterclaim for the sum of $400.63. Judgment was so entered, from which the plaintiff appealed.

The only question presented by the record for review is whether the conclusion of law and judgment are sustained by the facts found.

The trial court found that the defendant had accounted with the plaintiff for all money received from it, except the sum of $130.62, admitted in the answer. The here material facts found by the court are substantially these:

1. The defendant during all the time herein referred to was a broker engaged in the business of buying and selling grain on commission in the city of Minneapolis. He was a member of the Chamber of Commerce in that city. By usage and custom existing in the state of Minnesota and the city of Minneapolis, brokers employed to sell and purchase grain for others make such purchases and such sales in their own names, without disclosing their principals, and become personally liable for the contracts so made, and the principals of such brokers are, as between them and such brokers so employed, liable and obligated to perform the contracts of purchases and sales so made in their behalf, and to indemnify and save harmless such brokers against liability

98 M.—28

upon such contracts so made, all of which was well known to the plaintiff at all times.

2. On November 22, 1904, plaintiff employed the defendant to sell for it, in accordance with such usage and custom of the Chamber of Commerce, thirty thousand bushels of wheat, to be delivered at any time at the option of the plaintiff, between May 1 and May 31, 1905, for the sum of $33,418.75; that is, at the rate of $1.11⅜ per bushel upon the delivery of the wheat, and the defendant did so sell the wheat upon such terms and conditions, and duly notified plaintiff thereof. On the next day plaintiff employed defendant to sell for it another item of thirty thousand bushels of wheat on the same terms and conditions for the sum of $33,375; that is at the rate of $1.11¼ per bushel; and the defendant did, pursuant to such instructions, on said day sell the wheat and duly notified plaintiff thereof. On November 25, 1904, plaintiff notified the defendant that it would not deliver the wheat so sold, and that it would not carry out the contract it had directed the defendant to make in its behalf for the sixty thousand bushels of wheat, and absolutely repudiated the contract and refused to indemnify the defendant against liability upon the sales. Thereupon the defendant on the next day closed the transaction by purchasing sixty thousand bushels of wheat at the best market price then obtainable, to wit, the sum of $67,650, or at the rate of $1.12¾ per bushel, which was the fair market value of the wheat and the lowest price for which the same was obtainable. In closing the deal in regard to the sixty thousand bushels of wheat, which plaintiff had directed defendant to sell for it, and the contract which it repudiated, the defendant sustained a loss in the sum of $856.25. No part of said loss has been paid by the plaintiff except the sum of $325.

3. On November 28, 1904, the closing price of May wheat in the Minneapolis Chamber of Commerce was $1.11¼; on November 29, $1.-10⅛; and on November 30, $1.11¼; and that during the first fifteen days of May, 1905, the price of wheat did not reach so high a figure as $1.11¼ per bushel.

It is the contention of the plaintiff that upon the facts found it was entitled to judgment in its favor for the sum of $130.62 admitted to be due by the answer, for the reason that the facts sustain no part of the defendant's alleged counterclaim. On the other hand, the defend-

ant claims that the facts sustain his counterclaim for $856.25, which sum, less the payment of $325 and the amount admitted in the answer, $130.62, or for $400.63, he was rightly awarded judgment. The sole question, then, for our decision is whether the defendant, under the circumstances disclosed by the facts found, had the legal right to treat the plaintiff's renunciation of the contract as a present breach of the entire contract and bring an action accordingly for the loss.

The general rule as to damages for a breach of contract for the sale of goods is the difference between the contract price and the market price at the time and place when they ought to have been delivered. Coxe Bros. & Co. v. Anoka Waterworks, Ele. L. & P. Co., 87 Minn. 56, 91 N. W. 265. If this rule applies to the facts of this case, and there was no breach of the contract until performance was due, then the contention of the plaintiff that the defendant's counterclaim was prematurely asserted is correct. But if, as the defendant claims, the renunciation of the contract by the plaintiff gave the defendant the right, at his option, to treat it as a breach of the contract and at once to bring an action for damages, the counterclaim was not prematurely asserted and the decision of the trial court was right.

There is a conflict of judicial opinion as to the relative rights and liabilities of the parties to a contract, where one of them before performance is due unqualifiedly repudiates the contract and gives notice that he will not perform it. After a somewhat extended examination of the question, we are of the opinion, and we so hold, upon principle and the weight of judicial authority, that as a rule, if one party to an executory contract, before performance is due, expressly renounces the contract and gives notice that he will not perform it, his adversary, if he so elects, may treat the renunciation as a breach of the contract and at once bring an action for damages. 3 Page Cont., §§ 1437–1439; Cyc. 698; 2 Mechem, Sales, §§ 1087–1090; Roehm v. Horst, 178 U. S. 1, 20 Sup. Ct. 780, 44 L. Ed. 953. The leading cases to the contrary are Daniels v. Newton, 114 Mass. 530, 19 Am. 384, and Stanford v. McGill, 6 N. D. 536, 72 N. W. 938, 38 L. R. A. 760.

The case of Roehm v. Horst was one growing out of an executory contract for the sale and delivery of hops by Horst to Roehm, a brewer. The contract was substantially one for a five-year supply of hops, but the provisions as to the delivery for each season of five months were

embodied in separate written instruments. After deliveries according to the contract had been made for three years Roehm renounced the contract as to the two remaining years. Horst then brought an action against Roehm as for a breach of the contract. The circuit court sustained the action, and assessed the damages by finding the difference between the price at which the plaintiff could have made, at the time the contract was renounced, a subcontract for the future delivery of the hops according to the contract and the contract price thereof. The plaintiff had judgment accordingly, which was affirmed by the federal supreme court. That court, after a careful review of the American and English cases, including Daniels v. Newton and Stanford v. McGill, relating to anticipatory breaches of an executory contract by the refusal of one party to perform it, held that the action was not prematurely brought, and that the damages were correctly allowed on the basis adopted by the circuit court, and, further, that a party to an executory contract has a right to the maintenance of the contractual relations up to the time of performance, as well as performance of the contract when due.

In Dugan v. Anderson, 36 Md. 567, 583, the court said: "The principle of this decision (Hochester v. De La Tour, 2 El. & Bl. 678) in cases to which it has been held applicable is that there is a breach of the contract when the promisor repudiates it and declares he will no longer be bound by it. It is said the promisee has an inchuate right to the performance of the bargain, which becomes complete when the time for performance has arrived. In the meantime he has a right to have the contract kept open as a subsisting and effective contract. Its unimpaired and unimpeached efficacy may be essential to his interests. * * * It is therefore quite right to hold that such an announcement amounts to a violation of the contract in omnibus, and that upon it the promisee, if so minded, may at once treat it as a breach of the entire contract and bring his action accordingly. The contract having been thus broken by the promisor, and treated as broken by the promisee, performance at the appointed time becomes excluded, and the breach, by reason of the future nonperformance, becomes virtually involved in the action as one of the consequences of the repudiation of the contract; and the eventual nonperformance may therefore by anticipation be treated as a cause of action, and damages be assessed and recovered

in respect of it, though the time for the performance may yet be remote."

There are exceptions to the rule so announced. Thus, if a party agrees to pay a stated sum of money on a given future day, and before performance is due should renounce his contract and declare that he would never pay the money, this would not give the promisee, at his election, the right before the due day to bring an action as for a breach of the contract to recover the money. But if the promisor also agrees to give a promissory note as evidence of his agreement, and refuses so to do, the promisee may bring an action at once, and recover as damages the full amount of the money which the defendant promised to pay on a future day. American Mnfg. Co. v. Klarquist, 47 Mi..n. 344, 50 N. W. 243. The reason why a contract to pay money at a definite time in the future is an exception to the rule is that money is not a commodity which is sold and bought in the market and the market value of which fluctuates, as is the case with grain, stocks, and other similar articles.

It is unnecessary to enumerate the cases which might be exceptions to the rule, for it is clear that the case at bar is within the rule. The plaintiff employed the defendant as a grain broker to sell a quantity of wheat for him. The defendant did so in his own name, without disclosing his principal, in accordance with the mutual understanding of the parties. The defendant then was personally responsible for the performance of the contract, and the plaintiff was bound to perform the contract and save the defendant harmless. But he renounced his contract and declared that he would not perform it, and thereby deprived the defendant of his right to have the contract kept open as a subsisting and effective contract, unimpaired and unimpeached. Thereupon the defendant, being unwilling, in view of the plaintiff's hostile action, to assume all the risks of his continued solvency and the fluctuations in the market value of grain, did the only thing he could reasonably have done to protect himself from serious probable loss. He in effect sublet the contract to deliver the wheat at the time called for by the original contract by purchasing the amount thereof at the market price and closing the transaction. The damages allowed him by the trial court was the difference between the contract price and the market price paid for the wheat.

The only difference between this case and the case of Roehm v. Horst is that in that case the buyer repudiated the contract, and in this case the seller did so. There is no difference in principle between the two cases, and we adopt the rule laid down by the federal supreme court, for we believe it to be sound in principle; but, even if we were not entirely clear as to its correctness, we should be inclined to follow it, as the question is one of commercial law, which should be uniform so far as practicable.

Counsel for the plaintiff also urges that, even if the rule is to be applied to cases similar to this one, the defendant did not on the day he received notice of the repudiation of the contract elect to treat it as a breach and buy in the wheat on that day; that if he might wait one day, he might wait any number of days or weeks before electing, and then select a day when the market was unfavorable to the plaintiff. The party desiring to treat the renunciation of an executory contract as a breach thereof must elect within a reasonable time; otherwise, he might wait until the market was favorable to him and correspondingly unfavorable to his adversary, and elect to treat the contract as broken on that day. What is a reasonable time is ordinarily a question of fact. The finding of the court in this case is that the defendant received notice of the repudiation of the contract on November 25 and bought in the wheat the next day. While in cases of this kind, where the market value of the commodity which is the subject-matter of the action is liable to fluctuate from hour to hour, the party ought promptly to exercise his election, we cannot say as a matter of law that a delay of one day was unreasonable. There is no finding in this case that the delay was unreasonable, or that the defendant received notice of the repudiation of the contract before the market closed on that day, or that wheat was any lower on that day than the price at which the defendant bought it on the next day. We cannot presume error, or assume as a matter of law that the delay in this case was unreasonable.

Judgment affirmed.