[No. 13609. Department One. February 2, 1917.]

AUGUST SCHULZE, as *Pacific Pole Company*, Respondent, v. BUCKEYE LUMBER COMPANY, *Appellant*.[1]

PRINCIPAL AND AGENT—AGENCY—EVIDENCE—SUFFICIENCY. The evidence supports a finding that a bank officer acted as agent of the purchaser of timber in making an inspection, where, in response to a request for advice, he wired that he would visit the coast, investigate the matter, and report fully.

SALES—BY SAMPLE—CONDITIONS—WAIVER. Where a contract for poles did not specify the quality, but a sample was submitted and accepted, there was a waiver of any claim that the poles were to be of any different quality than the sample.

FRAUDS, STATUTE OF—SALES—WRITING—PAROL WAIVER OF STIPULATION. A stipulation as to the quality of poles sold by written contract may be waived by an oral agreement to accept poles corresponding with a sample furnished, without bringing the sale within the statute of frauds.

SALES—FOR RESALE—BREACH — MEASURE OF DAMAGES — MARKET PRICE. Upon breach of a contract for the sale of poles, which the vendor knew were purchased for resale, at Chicago, the measure of damages is the loss of profits, at the market price in that market, and the price received is some evidence of that market price.

[1] Reported in 162 Pac. 588.

SAME—BREACH—DAMAGES—WAIVER. Loss of profits on breach of a contract for the sale of poles purchased for resale, is not waived by a request to ship the poles after the time specified for delivery, where the request was made in an attempt to minimize the damages and in the hope of still effecting the resale.

Appeal from a judgment of the superior court for King county, Ronald, J., entered February 8, 1916, upon the verdict of a jury rendered in favor of the plaintiff, in an action on contract. Affirmed.

*Alexander & Bundy,* for appellant.

*Jones & Riddell* and *R. C. Hazen,* for respondent.

MORRIS, J.—Action to recover damages for breach of contract for the sale and delivery of cedar poles. The appeal is taken from a judgment awarding respondent $4,000 damages, based upon a verdict in his favor.

Respondent is a dealer in poles residing at Spokane. In April, 1913, after a number of communications had passed between them, he entered into a contract with appellant, a wholesale dealer in timber products at Seattle, for the sale and delivery of 2,000 poles. This contract was made after respondent, in company with Mr. Truax, had investigated the timber from which the poles were to be cut, and had been furnished a sample showing the quality and condition of the timber. Truax was an officer of the Traders National Bank, of Spokane, and while there is some dispute between the parties as to his connection with the matter and the purpose of his inspection of the timber, we think it is evident that he accompanied the respondent as the representative of the Naugle Pole & Tie Company, with whom respondent had contracted for the resale and delivery of the poles at Chicago. This is evident, we think, from communications between Truax and the Naugle company. The first is a telegram from the Naugle company to Truax in which reference is made to the purchase of the poles from respondent,

in connection with a request from respondent for part payment upon bill of lading, ending with this inquiry:

"Would you advise our making this advancement? Please advise fully night letter."

Truax wired a night letter, and on the same day wrote the Naugle company in part as follows:

"Either Mr. Gates or the writer will leave for the coast Wednesday night to investigate the proposition and see if it is one which will be advisable for you to handle. We will report to you by wire as soon as we have a chance to make this investigation."

The night letter of same date contains this statement:

"We will investigate personally as to quality and will report fully as promptly as possible."

We think this, with other supporting evidence, is sufficient upon which to base a finding that Truax was representing the Naugle company, and that the investigation made by him was made in its behalf and for its benefit.

On June 24th, the Naugle company cancelled its contract with respondent because of its failure to make delivery, and subsequently respondent brought this action seeking to recover as damages the profits he would have made upon a resale of 2,000 poles to the Naugle company had appellant not breached its contract. The contract for delivery to respondent is admitted by appellant, as is also its knowledge that respondent purchased the poles for resale, denying only that it knew to whom the poles were to be resold or the price to be paid.

One of the questions in the case is the kind of pole called for by the contract between respondent and the Naugle company. This contract was negotiated by respondent through Gibbs, a broker residing at Chicago, who testified that he obtained a contract in April, 1913, from Mr. Benham, representing the Naugle company; that the order was a verbal one, and that to the best of his recollection nothing was said

as to whether the poles should be cut from live or dead timber. So far as we can gather from the record, the order sent by Gibbs to respondent was for 2,000 poles, giving the sizes and price without reference to any required standard. Gibbs further testified that dead poles, if otherwise good and sound, find a market in and about Chicago; that as a rule poles are supposed to be live poles, but by special agreement dead poles may be used; that, on April 14, 1913, he received a letter from the Naugle company confirming .the verbal contract, in which reference is made to a compliance with the rules of the Western Red Cedar Association, which required poles to be cut from live growing timber; that, upon receipt of the sample obtained at the time of the inspection by respondent and Truax, he gave it to Benham, telling him it was a sample of the timber from which the poles would be cut; that this sample was satisfactory to Benham, who agreed to accept poles of like quality.

We think, in so far as this question is material, that, conceding respondent's contract with the Naugle company called for live poles, and that his contract with appellant did not so specify, the Naugle company agreed to accept poles of the character represented by the sample given it, and that the sample was furnished to respondent as representing the quality of pole that would be furnished. This would mean, we think, that poles of like character would be accepted by the Naugle company as conforming to its specification, and as this specification was made for its benefit, it could unquestionably accept the poles shown to it as a full compliance with the specification. We therefore have no doubt that the jury was justified in believing that, if appellant had furnished poles conforming to the sample furnished, respondent would have been able to satisfy the Naugle company contract if prompt delivery had been made. We admit that, ordinarily, the mere exhibition of a sample by the vendor does not of itself constitute a sale by sample, but that does not interfere with the other rule applicable here, that a party

to a contract may waive any specification therein made for his benefit, and may stipulate what would be a compliance with the contract.

Neither does such a stipulation, as contended by appellant, though oral, bring the case within the statute of frauds as to modification of written contracts by parol. Whatever may have been the effect of such a plea as between respondent and the Naugle company, we do not think it is available to appellant. In so far as this question enters into the measure of damages, it is clear that appellant knew respondent had resold the poles for Chicago delivery. The damages in contemplation of the parties then would be the loss to respondent if, because of appellant's failure, he failed to fulfill this Chicago contract. It would, in the absence of specific contract, be assumed, we think, that respondent would receive the market price at Chicago, and that the price as fixed in the Naugle company contract was at least some evidence of the market price. There is no question as to the unfitness of the poles shipped to Chicago by appellant. They complied with neither specification nor sample, and were for this reason rejected.

It is further contended that, because respondent, subsequent to the failure of delivery within the time specified, urged appellant to ship the poles, the breach was waived. We do not so consider it when all the correspondence, which is too long to here quote, is taken into consideration. It amounts to nothing more than an attempt on the part of respondent to minimize his damages in the hope that the Naugle company would, notwithstanding the delay, accept the poles.

Neither can we accept appellant's contention that there was no evidence of the resale of the poles to the Naugle company, nor competent proof upon which to base the damage sustained by respondent. The evidence of the profit on a resale of the poles at Chicago was indeed conflicting; but inasmuch as it was one of the facts to be determined from

competent evidence and under proper instructions, we must accept the verdict as fixing the profit.

Complaint is also made of instructions given and refused. The instructions properly submitted the case to the jury upon the respective issues made by the parties under their proof, and without setting out these claims of error in full, we rule against any claim of error based thereon.

Appellant contends it should have been granted a new trial because of newly discovered evidence and surprise. A careful examination of this claim, in the light of the showing made by both parties, convinces us there was no error in denying a new trial.

The great bulk of this record is made up of correspondence, and it is difficult to properly present all material facts within the space of an ordinary opinion. We conclude that all the issues were properly submitted to the jury, and that there is no good reason why the verdict should be disturbed.

The judgment is affirmed.

ELLIS, C. J., MOUNT, MAIN, and CHADWICK, JJ., concur.