[No. 14561.  Department One.  October 8, 1918.]

AUGUST SCHULZE, *Appellant,* v. JONES & RIDDELL *et al.,* *Respondents,* BUCKEYE LUMBER COMPANY, *Defendant.*[1]

ATTORNEY AND CLIENT — COMPENSATION — CONTRACT — EVIDENCE— SUFFICIENCY. The signing and returning of a complaint to commence suit sufficiently shows acceptance of an offer to take the case on the contingent fee proposed by the attorneys.

Appeal from an order of the superior court for King county, Ronald, J., entered May 19, 1917, establishing an attorney's lien for services, after a hearing before the court. Affirmed.

*Roche & Onstine,* for appellant.
*Jones & Riddell* and *R. C. Hazen,* for respondents.

PARKER, J.—This is a proceeding to enforce a claim of lien, filed by Jones & Riddell and R. C. Hazen, against a judgment rendered in favor of August Schulze and against the Buckeye Lumber Company, the claim being for services rendered by them as attorneys of record for Schulze in the action. The issues were made up by the attorneys' claim of lien and the objections of Schulze thereto, filed in the main action,

[1]Reported in 175 Pac. 311.

which were treated as the pleadings in the controversy. The matter was submitted to the superior court upon the merits, as provided by Rem. Code, § 138, resulting in a final order establishing the lien as claimed. From this disposition of the matter, Schulze has appealed to this court.

The controversy is over the amount of compensation to be received by the respondents for their services rendered in the action, and as to what the contract between the parties was in that particular, it being conceded that there was a contract from which the amount of respondents' compensation is determinable by computation, judgment having been rendered as the result of respondents' efforts and the amount thereof paid into court by the Buckeye Lumber Company, the judgment debtor. The judgment was affirmed by this court upon appeal. *Schulze v. Buckeye Lumber Co.*, 94 Wash. 520, 162 Pac. 588. The contract is evidenced by letters of the parties, each to the other, and we think also by the conduct of appellant.

The controlling facts may be summarized as follows: In the summer of 1914, appellant placed in the hands of respondents, as his attorneys, his claim of several thousand dollars against the Buckeye Lumber Company. It becoming apparent that no satisfactory settlement could be made with the lumber company, the matter of suing that company upon the claim, and the expense of such an action, including attorneys' fees, began to be considered by appellant and respondents. On October 1, 1914, respondents wrote to appellant as follows:

"In your former letter you asked to be advised what my fee would be for services in this matter. I will take it for a flat fee of $500, or I will take a fee of $100, win or lose, and 30 per cent of the amount recovered (less the $100 already paid as a contingent

fee). I will, of course, expect you to pay the costs in any event. They will probably run about $100 so far as I can see now.''

On October 5th, appellant answered as follows:

''As I am not in good circumstances at present I can only promise to pay you of the money collected from the Buckeye Lumber Company. As we are strangers I have had Mr. Folsom to write you which I enclose.''

The letter from Folsom, which was inclosed, was as follows:

''It would be very difficult for him (Schulze) to spare any money as a retainer. He is entirely honest and you can depend on any arrangement you may make with him, but I believe he intends to ask you to take the prospective litigation on a contingent basis without any payment as a retainer. He seems to feel that a letter from me might help him to convince you that his desire to make an arrangement with you wholly contingent is not because he lacks faith in a lawsuit, but because he has not enough money to pay either a flat fee or a retainer in connection with a contingent arrangement.''

On October 10th, respondents answered these letters as follows:

''In regard to the fee, if you do not feel able to pay any fee at the present time, I will take the case on a straight contingent fee of 50 per cent of the amount recovered. I shall, of course, expect you to pay the costs.''

On October 13th, the appellant wrote to respondents as follows:

''Your letter of October 10th received. Regarding your fee, it seems to me certain for us to get a judgment in our favor. I would prefer to give you a note for $100 on your 30 per cent proposition, all to be taken out of the collection.''

And on October 23d, respondents answered appellant as follows:

"In regard to fees, under present conditions I should not care to consider the note proposition, and think we had better go back to a straight 50 per cent contingent fee. Please send me your check for $25 to cover initial costs."

These letters of respondents, it will be noticed, are in the first person. This evidently is accounted for by the fact that they were written by one of them, but manifestly in the interest of all. Thereafter respondents prepared and sent to appellant a complaint looking to a commencement of the action, which complaint, after being signed and sworn to by appellant, was returned to respondents on November 13th, and thereupon the action was commenced by respondents. Thereafter some correspondence passed between appellant and respondents looking to the agreeing upon the compensation to be $100 retainer and thirty per cent of the amount of the recovery; in other words, looking to a change of the contract evidenced by the letters and the signing and verifying of the complaint by appellant and sending it to respondents to commence the action. This $100 retainer and thirty per cent proposition, however, manifestly was conditioned upon the appellant actually paying the $100 retainer in cash within a specified time, long before the trial of the action, which was never done.

It seems plain to us that the minds of the parties met upon the straight fifty per cent basis. This, we think, is rendered plain by the correspondence prior to the signing and verifying of the complaint, and by appellant's sending the complaint, signed and verified, to respondents. All that was said in the correspondence thereafter was, to our minds, only looking to a change of the original agreement of the parties, which

change, we think, clearly was never brought about. Counsel for appellant argue that his statement in the letter of October 13th, that he preferred to give a note for $100 on the thirty per cent proposition, negatives the acceptance by him of the fifty per cent proposition. It may be conceded that this does suggest that he preferred that proposition to the fifty per cent proposition. But the trouble is, that proposition was never accepted by respondents. And we think appellant's action in thereafter signing and verifying the complaint and sending it to respondents in effect authorized them to commence the action, and was an acceptance of the fifty per cent proposition. As was said by Justice Holmes, speaking for the supreme court of Massachusetts, in *Hobbs v. Massasoit Whip Co.*, 158 Mass. 194, 33 N. E. 495:

"The proposition stands on the general principle that conduct which imports acceptance or assent is acceptance or assent in the view of the law, whatever may have been the actual state of mind of the party— a principle sometimes lost sight of in the cases."

It seems quite clear to us that the order establishing the lien claimed by respondents must be affirmed. It is so ordered.

MAIN, C. J., FULLERTON, TOLMAN, and MITCHELL, JJ., concur.