## DREYER COMMISSION COMPANY v. FRUEN CEREAL COMPANY.[1]

April 15, 1921.

No. 22,273.

**Sale — when seller is liable for demurrage charges.**

1. Where a seller of goods undertakes to make shipment to the buyer and fails to obey shipping instructions, and as a result the buyer fails to receive prompt notice of the arrival of the shipment and demurrage charges accrue which he is obliged to pay, the seller is liable to make reimbursement. The evidence in this case sustains a finding that the seller disobeyed shipping instructions with the result stated.

**Same — damages on breach of executory contract.**

2. The measure of general damages upon a breach by a vendor of an executory contract to sell goods at an agreed price, is the difference between the contract price and the market value at the time and place of delivery.

**When special damages are recoverable.**

3. Special damages, such as expected profits from a resale, may be recovered, if, at the time of making the contract, the buyer has an existing contract of resale and the purchase is made for the purpose of filling it and the goods cannot be otherwise procured and the seller is apprised of these facts when the contract is made.

**Lost profits on subsale recoverable, when.**

4. Within the principle of this rule it is *held* that, where the original contract of sale was repudiated by the seller and later renewed and at the time of the renewal agreement the fact of a subsale was known and was in contemplation of the parties, profits on such subsale, unavoidably lost, are a proper element of special damage.

Action in the district court for Hennepin county to recover $438.02 for loss of profits and demurrage charge on a shipment of hominy feed. The answer was a general denial. The case was tried before Montgomery, J., who made findings and ordered judgment in favor of plaintiff for

[1] Reported in 182 N. W. 520.

the amount demanded. From an order denying its motion for a new trial, defendant appealed. Affirmed.

*George S. Grimes,* for appellant.

*Woodlief Thomas,* for respondent.

HALLAM, J.

1. Plaintiff was a dealer in flour, grain and feed in Saint Louis. Defendant was engaged in manufacturing and jobbing the same products in Minneapolis. In November, 1918, plaintiff purchased from defendant, five cars of hominy feed to be shipped to Saint Louis, freight prepaid, with draft attached to the bill of lading. Shipping instructions were "ship to us at Saint Louis, any line." Controversy arises over two of these cars. Plaintiff claimed that defendant, in violation of shipping instructions, caused these cars to be shipped from Le Mars, Iowa, and to be billed to the "Plymouth Milling Company, Saint Louis   *   *   * notify Wernli-Anderson Company at Saint Louis, Missouri." At about the time of shipment, defendant forwarded to plaintiff invoices of the two cars. The invoice in case of one car contained the language "shipped from Minneapolis, Minn." "ship to order of Fruen Cereal Company *   *   *   notify Dreyer Commission Co.   *   *   * Route I C car initial Soo car No. 106948." The invoice in case of the other car was in the same form and contained the same language except as to description of the car.

Plaintiff did not learn of the arrival of the cars at Saint Louis until some days after their arrival, and, when it did do so, demurrage charges had accumulated to the extent of $138, which plaintiff was obliged to pay. Plaintiff claims this payment became necessary because of failure of defendant to obey the shipping instructions. The trial court found the facts in accordance with plaintiff's contention and ordered judgment for the amount paid. If, as the court found, shipments were made contrary to instructions, and, as a result, demurrage charges accrued, which plaintiff was obliged to pay, we do not doubt that defendant is liable to reimburse plaintiff in the amount paid.

Defendant contends that there is no evidence to sustain the finding that the shipments were made in the manner claimed. Plaintiff did not produce the original bills of lading and copies that were produced were

excluded from evidence. There is evidence, however, that plaintiff promptly wrote defendant of the demurrage charges, stating in the letter that the cars were not shipped "notify us" and were billed "in the name of Wernli-Anderson," and on the following day again wrote defendant that the cars were shipped "notify Wernli-Anderson" without plaintiff's knowledge. Again plaintiff wrote, inclosing a bill for the demurrage paid, and stating that the cars were shipped "notify Wernli-Anderson." Defendant never in its correspondence or otherwise denied this. There was also evidence that plaintiff never received notice of the shipment, except as contained in the invoices, and did not receive the bills of lading, and also evidence that when cars are billed in the manner plaintiff had instructed, notice is customarily received promptly on arrival, usually within 24 hours. The evidence is sufficient to sustain the court's finding that these cars were improperly billed as claimed by plaintiff and the decision on this cause of action should stand.

2. The second cause of action is for damages for failure of defendant to fulfil its contract to sell plaintiff five cars of hominy feed. The contract and the breach are undisputed. The only question is as to the measure of damages. The facts as they appear from findings of the trial court or undisputed evidence are as follows:

The contract was made December 6, 1918, and the feed was to be shipped within 60 days. At the time of making the contract or shortly thereafter, plaintiff entered into a contract with the Ralston Purina Company to sell said cars of feed at an advance of $2 per ton, delivery to be made at Saint Louis, within 60 days after December 6. The court found that a short time after December 6, and long prior to the expiration of the 60 days, plaintiff notified defendant that it had resold the hominy at a profit and that plaintiff was relying on delivery by defendant to fulfil its contract with the Ralston Company. On January 21, 1919, after repeated inquiries from plaintiff, defendant notified plaintiff that it was not able to make delivery under its contract. After further correspondence and on January 31, defendant wired asking if plaintiff would accept white hominy. On the same day plaintiff wired "our buyers will not accept white," and wrote saying "our buyer simply tells us that * * * as it now stands * * * he is going to stand by his contract or cancel for a cash consideration." On February 1 defendant

wired: "We are ready to ship hominy." On February 6 defendant wired plaintiff that it was unable to fill its contract. It was then too late for plaintiff to purchase elsewhere to fulfil its contract of resale, which fact, the court found, defendant well knew, and plaintiff lost the sale to the Ralston Company.

On these facts the court gave damages in the amount of the profits it would have made on the resale. In our opinion the decision was right. The measure of general damages upon a breach by the vendor of an executory contract to sell goods at an agreed price is the difference between the contract price and the market value at the time and place of delivery. Paine v. Sherwood, 21 Minn. 225, 232; Coxe Bros. & Co. v. Anoka W. W. E. L. & P. Co. 87 Minn. 56, 91 N. W. 265; Alger-Fowler Co. v. Tracy, 98 Minn. 432, 107 N. W. 1124; Crowley v. Burns B. & M. Co. 100 Minn. 178, 188, 110 N. W. 969.

3. Special damages may be recovered if they are such as may reasonably be supposed to have been contemplated by the parties, when making the contract, as the probable result of the breach. Paine v. Sherwood, supra, citing Hadley v. Baxendale, 9 Exch. 341. Expected profits from a resale are special damages and may be recovered where the parties may be considered to have contracted in reference to a resale. If, at the time of making the contract, the buyer has an existing contract of resale and the purchase is made in contemplation of such contract of resale, and for the purpose of fulfilling it, and the goods cannot be otherwise procured in the market, and the seller is apprised of these facts, at the time the contract is made, the buyer may recover the profits he loses by reason of the breach. 35 Cyc. 644, 645; 24 R. C. L. 81; Hubbard v. Rowell, 51 Conn. 423; Booth v. Spuyten Duyvil Rolling Mill Co. 60 N. Y. 487; Cockburn v. Ashland Lumber Co. 54 Wis. 619, 12 N. W. 49; Wilmoth v. Hamilton, 127 Fed. 48, 61 C. C. A. 584; Schulze v. Buckeye Lumber Co. 94 Wash. 520, 162 Pac. 588.

4. We think the facts of this case bring it within the rule. It is true, at the time of the sale on December 6, defendant was not advised of the subsale. But after the original contract had been repudiated, it was again renewed, and, at the time of the renewal agreement, the subsale was known and was in contemplation of the parties. The reason and

spirit of the rule seem to us to apply and we apply the rule. Upon showing that the profits were unavoidably lost, plaintiff became entitled to recover their amount as special damages.

Order affirmed.