# MINNESOTA GRAIN COMPANY v. NATURAL WOOL GROWERS DEPARTMENT AND ANOTHER.[1]

July 14, 1922.

No. 22,887.

**Measure of damages for breach of executory contract to buy and sell grain on the market.**

1. The general rule as to damages for the breach of an executory contract for the purchase and sale of grain on the market, is the difference between the price paid and the market price at the time and place of delivery.

**Remedies of principal against broker who violates his contract.**

2. Where one party to an executory contract, acting as agent for the other in the purchase and sale of grain on the market for future delivery, violates the contract and refuses to reinstate it, the principal may treat the renunciation as a breach and at once bring an action for damages, or he may treat it as a breach of the entire contract and bring his action for damages as of the time fixed for the delivery of the grain.

[1]Reported in 189 N. W. 590.

Action in the district court for Dakota county to recover $2,000, upon two promissory notes. Defendant Brown set up a counterclaim for $5,000. The case was tried before Johnson, J., who at the close of the testimony denied plaintiff's motion for a directed verdict for $1,987, and a jury which returned a verdict for $1,879.50 in favor of defendant Brown. From an order denying its motion for judgment notwithstanding the verdict or for a new trial, plaintiff appealed. Affirmed.

*Alvord C. Egelston,* for appellant.

*Albert Schaller* and *Kueffner & Marks,* for respondents.

QUINN, J.

Action to recover upon two promissory notes made by the defendant corporation, payable to Gertrude McCauley, indorsed by her without recourse to the defendant Brown and by him indorsed to plaintiff as collateral; one for $1,500 dated July 18, 1916, and payable January 18, 1917; the other for $500 dated August 1, 1916, and payable February 1, 1917. Each of the notes contained a provision waiving presentment for payment, notice of dishonor and notice of protest by each maker, indorser and guarantor. The defendant Brown was the secretary and treasurer of the defendant corporation that issued the notes. Plaintiff was a member of the Chamber of Commerce of Minneapolis. Brown entered into a contract with plaintiff, whereby plaintiff agreed to make purchase of grain on the floor of the chamber of commerce for defendant corporation for May, 1917, delivery, the purchase to be in its name. It was also agreed that Brown should turn over the notes mentioned to the plaintiff as security for any obligations that were incurred in such purchases, and further that he would guarantee payment of the notes. Defendant contends that it was further agreed that plaintiff should not close out any purchase of grain made for him without first giving him notice and an opportunity to put up additional security.

With this situation Brown indorsed the notes and turned them over to the plaintiff as security in accordance with the agreement. The wheat purchased was all for May, 1917, delivery, that is, the seller had the right to deliver the grain at any time during the

month of May, and the buyer had the right to demand it on May 31. Five thousand bushels were purchased on January 2 and closed out on the thirteenth at a profit of $55 and credit given. Five thousand bushels were purchased on January 15 and closed out on the nineteenth at a profit of $186.25 and credit given. Again 7,000 bushels were purchased on January 19 at $1.91, and on January 26 there was a further purchase of 1,000 bushels at $1.82⅛. On February 1 the 8,000 bushels were closed out; 5,000 at $1.62; and 3,000 at $1.63, showing a loss of $2,213.25. The defendant Brown complains of the sale of this 8,000 bushels, contending that it was closed out without giving him notice and an opportunity to advance more security. The notes were not paid. The plaintiff, after deducting from the loss the profits then to the credit of Brown, brought this action on the notes to secure the balance of $1,987. The defendant Brown counterclaimed for damages on account of plaintiff's failure to notify him before closing out the 8,000 bushels. There was a verdict in favor of the defendant Brown for $1,879.50. From an order denying its alternative motion for judgment or a new trial, plaintiff appeals.

The jury found for the defendant, which establishes his contention that as a part of the contract the plaintiff was to notify defendant and give him an opportunity to put up further security before closing out any purchase at a loss. It is not claimed that plaintiff in any way complied with this condition of the contract as to giving defendant notice before closing out the purchase of the 8,000 bushels on February 1. We have then to consider whether the fact that the note for $1,500 was not paid when due created such a default in the contract between Brown and the plaintiff as to relieve plaintiff from liability for having failed to notify Brown before closing out the sale, and whether the measure of damages submitted to the jury was proper. No question was raised upon the trial as to the sufficiency of the pleadings, but testimony as to the terms of the contract and also as to the question of damages was received without objection.

We go directly to a consideration of the issues litigated upon the trial. The note for $1,500 became due on January 18. By the terms

of the contract, Brown had agreed to guarantee payment of the notes and to turn them over to plaintiff as security for any advancements it might make on purchases of grain for him. He did so indorse, guarantee and deliver the notes to plaintiff according to agreement. Subsequent to January 18, the date of the maturity of the $1,500 note, plaintiff continued to make purchases for Brown without any protest as to the payment of the note, apparently holding it as collateral to the contract. It was under such conditions that the purchase and closing out of the 8,000 bushels in question were made. Under these circumstances the failure of the defendants to pay the notes on the date they became due, did not amount to such a breach of the contract as to justify plaintiff's failure to notify defendant before closing out the purchase. Plaintiff had its security for the performance of its contract, and, if it felt insecure, it should have notified the defendant and given him an opportunity to put up further security to protect his purchase before closing it out.

The court instructed the jury that the measure of damages would be the difference between the price at which the grain was purchased and the market price on May 31, 1917, less the amount paid out by plaintiff for the defendant, while it is contended on behalf of the appellant that the measure of damages should be based upon the market price of wheat upon or within a reasonable time after the sale, and not upon the price on May 31. It may be said that where an agent, acting as a grain broker, is authorized to buy and sell grain for his principal on the market, with specific directions not to sell or close out a purchase at a loss without first notifying his principal so as to give the latter an opportunity to put up further funds to protect his interest, and he fails so to do and a loss follows, the agent renders himself liable for the resulting loss as for a breach of contract. There is a breach of contract when the promiser repudiates it. The contract having been so broken, the promisee may treat the breach as a cause of action and have his damages assessed as of the time of the breach, or, he may treat it as a breach of the entire contract and bring his action for damages as of the time fixed for the performance of the contract, which in the instant case would be May 31. Alger-Fowler Co. v. Tracy, 98 Minn. 432, 107 N. W. 1124.

After the sale of the wheat plaintiff refused to reinstate the purchase upon demand by defendant. It was possible to do so. Had the purchase been reinstated upon such demand, defendant's damages would have been as of that date. Upon such refusal the defendant had a right to insist upon compliance with his contract and to maintain an action for damages for the breach thereof as of the time fixed for the delivery of the grain.

Affirmed.