## A. D. McRAE, TRUSTEE OF FEDERAL DAM LUMBER COMPANY v. ITASCA PAPER COMPANY.[1]

October 20, 1922.

No. 23,002.

**Breach of sale contract by buyer—burden of proof on seller.**

1. Under the Uniform Sales Act when the purchaser repudiates his contract or manifests his inability to perform, the seller may cease performance and recover damages which include the profit which he would have made had he completed. The burden of proof is upon the seller, and the repudiation or manifestation of inability to perform must be definite.

**Judgment non obstante proper.**

2. The evidence did not sustain a finding that the defendant repudiated a contract for the purchase of spruce wood or manifested its inability to perform; and judgment notwithstanding the verdict was rightly ordered for the defendant.

Action in the district court for Itasca county to recover $4,200 for breach of contract. The case was tried before Stanton, J., who at the close of the testimony denied defendant's motion for a directed verdict, and a jury which returned a verdict for $1,140. Defendant's motion for judgment notwithstanding the verdict was granted. From the order granting that motion, plaintiff appealed. Affirmed.

*Courtney & Courtney,* for appellant.

*Moore, Oppenheimer, Peterson & Dickson,* for respondent.

DIBELL, J.

The plaintiff McRae is the trustee in bankruptcy of the Federal Dam Lumber Company. He brings this action to recover damages for breach by the defendant of a contract for the purchase of spruce wood from the lumber company. There was a verdict for the plaintiff. The court granted defendant's motion for judgment notwithstanding the verdict. The plaintiff appeals.

[1]Reported in 190 N. W. 72.

1.  Section 64, subdivision 4, of the Uniform Sales Act, Laws 1917, p. 787, c. 465, provides that when material, labor or expense is necessary on the part of the seller to complete his contract, and the buyer repudiates, the seller can recover no greater damage than if he did nothing more in the carrying out of the contract; but that the profit which he would have made will be considered in estimating damages.

Section 65 is as follows:

"Where the goods have not been delivered to the buyer and the buyer has repudiated the contract to sell or sale, or has manifested his inability to perform his obligations thereunder, or has committed a material breach thereof, the seller may totally rescind the contract or the sale by giving notice of his election so to do to the buyer."

The law allows the seller to rescind "not simply for repudiation, but also because of the inability of the other party to perform, and for any breach of contract so material and substantial that it would be a defense to an action brought by the party in default under the contract." Williston, Sales, § 592. Using the language of the court in Anvil Mining Co. v. Humble, 153 U. S. 540, 552, 14 Sup. Ct. 876, 880, 38 L. ed. 814, the wronged party to the contract "may abandon it, and recover as damages the profits which he would have received through full performance," the abandonment being "merely an acceptance of the situation which the wrong-doing of the other party has brought about." The law of the sales act is substantially the common law of this state as it was before and is in general harmony with the law throughout the country. Dunnell, Minn. Dig. 1916 and 1921 Supps. § 8628, et seq., and cases cited. The burden of proof is upon the plaintiff. The conduct of the defendant must be such as to indicate with some directness a repudiation of the contract, or likewise manifest an inability to perform. Gibbons v. Bente, 51 Minn. 499, 53 N. W. 756, 22 L. R. A. 80; Alger-Fowler Co. v. Tracy, 98 Minn. 432, 107 N. W. 1124; Matteson v. U. S. C. & L. Co. 103 Minn. 407, 115 N. W. 195; 5 Paige, Contracts, § 2902; 1 Black, Rescission & Cancellation, §§ 202-204.

2. On December 20, 1920, the lumber company and the paper company entered into a contract for the sale by the former to the latter of 2,000 cords of spruce, to be cut during the season of 1920 and 1921, and to be delivered on or before July 1, 1921, at $13.40 per cord. None was delivered. On February 21, 1921, the lumber company wrote the paper company making inquiry about the time when delivery was desired and asking an advance of $5,000. About the same time Hilleboe, the president of the lumber company, interviewed the officers of the paper company at Grand Rapids. He says:

"Mr. Blandin, Mr. Andrews and the other representative of the company [said] that they had all the pulp that they could use. I told them that I was going to ship the full two thousand cords of the contract, I was going to fill the contract to the letter; told this to Mr. Andrews alone, told him I was going to ship the pulpwood to Grand Rapids when the embargo was lifted. Mr. Andrews said that if I shipped it they could not pay for it."

At this time the railroads were refusing cars because of the surplus wood at the mills. This refusal is referred to as the embargo. On February 23, 1921, the paper company wrote the lumber company as follows:

"Owing to the favorable working conditions in the cutting of forest products this winter, the Itasca Paper Company finds itself already supplied with more pulpwood than it has facilities to take care of. We do not desire to receive any more wood and you may feel at liberty to dispose of your wood elsewhere that you intended to ship to this company."

The letter had not come to Hilleboe at the time of the conversation just mentioned. A few days later he was at Duluth and talked over the phone with Andrews at Grand Rapids. He then knew of the paper company's letter. Andrews gives the conversation as follows:

"Mr. Hilleboe called me up and said that he had received our letter and that he had made a deal to dispose of his wood for two dollars a cord less than the price named in the contract and he

would expect us to pay the difference to him, and I told him that our letter was not a refusal to accept the wood under the contract and that we could not pay the difference in the price and that our letter had merely stated that we did not desire the wood, but that if he insisted on delivering we would take it. He said he had not seen the letter from us, but had had a telephone message from his camp telling him that they received that letter and, under the circumstances, he would probably call off the deal."

The deal which Hilleboe said he probably would "call off," as Andrews understood it, was the one for a sale to the Duluth people. It had not been concluded at that time. It was concluded within a week. On March 17, the lumber company wrote the paper company that in view of the conversation at Grand Rapids and the letter of February 23 it had resold the wood cut, had stopped further cutting, and would hold the lumber company for damages.

The question is whether what transpired amounted to a repudiation by the paper company or the manifestation of an inability to perform the contract so that the lumber company can recover as for a breach. The trial court held that it did not. We are of that view.

The lumber company was in great financial stress when it wrote the paper company and when Hilleboe interviewed its officers. Its timber operations had not progressed satisfactorily. It wanted ready money. It had to have it. The paper company would not help it. By selling to the Duluth people it got several thousand dollars presumably in cash. The defendant's letter of February 23 was intended to discourage the fulfilment of pending contracts. A letter of like form was sent to all having spruce contracts of any considerable amount. It was not quite frank. From it a contractor might distrust the purpose of the paper company. It was not an affirmative acknowledgment of liability on the contract with a request that production be decreased or the product sold elsewhere. The conversation between Hilleboe and Andrews over the phone followed within a few days and is not denied. Hilleboe says he called Andrews and had a conversation but is unable to recollect it. Under these circumstances the testimony of Andrews cannot

be disregarded.   Second Nat. Bank v. Donald, 56 Minn. 491, 58 N. W. 269; Dunnell, Minn. Dig. and 1916 Supp. § 9786.   The conversation must be assumed to be substantially as stated.   This being so, the letter and conversation taken together, both prior to the plaintiff's sale of its product, there was no repudiation of the contract by the defendant nor was there a manifestation of inability to perform.   Apparently it was financially able to perform.

Taking it all in all, we think the plaintiff cannot recover.   A test of some value in determining the correctness of this result is had if it be supposed that after the telephone conversation between Duluth and Grand Rapids the lumber company, with nothing more said, had continued its work, and within the time limited had tendered or delivered the 2,000 cords of spruce, and the paper company had then refused acceptance upon the ground that there had been a repudiation back in February or March.   Its defense could hardly have been sustained.

Order affirmed.