## JOHN M. BRADFORD v. HENRY L. DOHERTY.[1]

April 15, 1932.

No. 28,680.

*Briggs, Weyl & Briggs,* for appellant.
*Samuel Lipschultz,* for respondent.

DIBELL, J.

The plaintiff's claim is that the defendant repudiated and renounced a contract whereby the defendant was to sell him stock, and that he, the plaintiff, upon such repudiation rescinded and was entitled to recover the partial payments which he had made upon the contract as for money had and received. At the close of the testimony the court directed a verdict for the plaintiff for $2,605.88, the amount asked. The defendant appeals from the order denying his alternative motion for judgment notwithstanding or a new trial.

The plaintiff on September 5, 1929, contracted to purchase of the defendant 75 shares of Cities Service Company stock at 52¾ per

[1]Reported in 242 N. W. 339.

share. On March 4, 1930, he contracted to purchase 75 shares at 35⅛ per share. This contract embodied the earlier one; that is, they were consolidated. The plaintiff was to pay $5,313.75, by the terms of the consolidated contract, in 20 monthly instalments of $265.65 each. At the time of the commencement of this action he had paid $2,605.88. Title was not to pass nor the shares be delivered nor were they to bear dividends until February 2, 1931. The monthly payments fell due on the first of each month, but there was no default until the 15th of the month. Interest at six per cent was allowed on each instalment when full payment was made for all. The contract provided the effect of default as follows:

"After April 1, 1930, Purchaser may elect by mailing, registered mail, written notice addressed to Seller at the above address to cancel this Agreement as of the fifteenth of the month on the first of which any monthly installment became due and was not paid, provided Purchaser so mails said notice prior to such fifteenth thereof. In event Purchaser so elects to cancel or fails to pay any monthly installment within fifteen days after the same became due, this Agreement shall become automatically cancelled and terminated as of the fifteenth of the month upon the first of which said installment became due and was not paid.

"In case this agreement is cancelled or terminated then Purchaser's account will be credited in the total amount of Purchaser's agreed purchase price for shares covered hereby, but, in case this amount is greater than the market value of such shares at the last sale price on the New York Curb Exchange on the date of cancellation, the credit will be said market value and not the total amount of Purchaser's agreed purchase price. In case of such cancellation or termination Seller, within thirty (30) days thereafter, will refund to Purchaser any credit balance shown by Purchaser's account, without interest, but if Purchaser's account shows a debit balance Purchaser shall be liable therefor."

On August 11, 1930, the plaintiff requested of defendant's St. Paul office an extension of the August payment for one month. This request was referred to the New York office, and by a letter of August

22, 1930, the defendant through its St. Paul office agreed to the proposed extension, saying this:

"In view of the circumstances which you recited to us, our New York office has agreed to permit you to omit the August payment on your purchases of March 4th, 1930, and September 5, 1929, consolidated under 20 month payment plan and to extend your 20 month contract to 21 months providing that you will sign the enclosed form of agreement and return it to us within the next five days.

"You will note, however, that this agreement does not permit the omission of any other monthly payment than the one specified nor does it otherwise alter or amend your contract."

The offer was accepted by the plaintiff by letter dated August 27, 1930, stating as follows:

"In consideration of your allowing me to omit the August payment and the extension of my 20 month payment to 21 months, pursuant to your letter of August 22nd, 1930, referring to my contract covering purchases of 75 shares of Cities Service Company common stock on September 5th, 1929, at 52¾, order #43410, and 75 shares at 35⅛ per share on March 7th, 1930, order #31925, I, John M. Bradford, hereby agree, that in default of payment of one installment on September 15th, 1930, I will accept settlement at the market bid price of September 15th, 1930, or the market bid price of August 15th, 1930, whichever is lower."

By a letter of August 29, 1930, the defendant from his New York office notified the plaintiff that the contract was terminated on August 15, resulting in an indebtedness from the plaintiff of $112.65, and requested a check for that amount. The letter read as follows:

"We are sorry to note that you failed to make the installment payment due August 1st, 1930, under your twenty payment plan contract for the purchase of the common stock of Cities Service Company.

"In accordance with the terms of your agreement, it was terminated August 15th, 1930, resulting in an indebtedness due us of

$112.65, as indicated on the enclosed statement, for which we will be pleased to receive your check."

On September 2, 1930, the plaintiff answered the defendant's letter of August 29, 1930, stating that there had been an extension and requesting the defendant to correct his records and notify him. There was no response. On September 11, 1930, the plaintiff paid the instalment of $265.65 which became due on the first of that month at the defendant's St. Paul office. On September 22, 1930, the plaintiff, by air mail, called the defendant's attention to his letters of September 2 and September 11, and stated that he had received no reply to the first and no receipt for the check in the second, and requested that the receipt be sent and that the defendant state his position as to the termination of the contract. He said in part:

"On the 11th day of September, I sent a check for $265.65 to your St. Paul office, pursuant to terms of my contract. I have not received any acknowledgment from them, and wish you would send me proper receipt for the same, together with a statement showing the amount now due under the installment contract, and the various payments which I have made upon the same. It is quite important I have this information at once, so as to arrange for the next payment.

"You advise that my account has been closed by the cancellation of my contract on account of the default in the payment, which you had before agreed to omit. I certainly want to understand the position you take on my contract, and trust this information will reach me without delay."

The defendant answered from New York that plaintiff's account had been transferred to defendant's Minneapolis office and that plaintiff's letter had been forwarded with directions to advise him direct. The plaintiff received no information from the Minneapolis office. On October 3, 1930, he brought this action for rescission and recovery of the instalments paid, upon the ground that the defendant had repudiated his contract and that he was entitled to

the payments as for money had and received. The answer was a general denial.

Soon thereafter the defendant brought an action against the plaintiff for $215.79 upon the theory that there was a termination of the contract for default in the payment of the October instalment. The answer set up a rescission prior to that time and counterclaimed. The amount due from the plaintiff to the defendant if the contract was rightly terminated for nonpayment of the October instalment was $215.79, that being the difference between the selling price in the manner agreed and the amount which the plaintiff had paid. The two actions were tried together.

If the payment of the August, 1930, instalment was postponed so as to become due as the 21st instalment instead of the 20th, the defendant had no right to foreclose or terminate or sell out, whatever the appropriate term, the contract of the plaintiff, for there was no default. Still it notified the plaintiff that the contract had terminated for default in the payment of the August instalment and asked a check for the deficiency resulting from the sale computed according to the terms of the contract. The plaintiff by his letters of September 11, 1930, and September 22, 1930, made proper inquiries. He received no answer and had the statement from the company that his contract was closed and that he was owing the defendant according to its terms. On October 3, 1930, he rescinded upon the ground that the defendant had repudiated the contract. There was no claim in the pleading that there was a mistake on the part of the defendant. There was no explanation. There was evidence of a letter written by the manager of the St. Paul office to the plaintiff just at the end of September, 1930, but not mailed until October 3, 1930, when the action was commenced. The reason given by the witness for not sending it before was this:

"I had not received written instructions from Minneapolis and desired the instructions in full detail relative to reinstatement of the case."

The plaintiff's evidence is that he did not receive such a letter and that he did not receive a notice of reinstatement before or after he brought suit.

It could be found that the acts of the defendant constituted a cancelation and repudiation of the contract because of the failure of the plaintiff to comply with its terms. The plaintiff was not in default. If the defendant renounced liability under the contract and asserted that the plaintiff was without rights in it, when he had made his payments, the plaintiff could rescind and recover what he had paid. The general rule is conceded. Alger-Fowler Co. v. Tracy, 98 Minn. 432, 107 N. W. 1124; Engel v. Mahlen, 153 Minn. 1, 189 N. W. 422; 2 Dunnell, Minn. Dig. (2 ed.) § 1798, et seq. Such repudiation does not appear as a matter of law. The jury might put a different construction upon the evidence. It might think that there was a mistake and that the defendant did not really claim that the contract was at an end, and that the plaintiff did not understand it so. And again the trier of fact might take the view that there was such a distinct assertion that plaintiff's rights were at an end and his contract gone that the plaintiff might treat it as a repudiation, and was so justified in making a rescission. A verdict however should not have been directed for the defendant nor for the plaintiff. The issue was for the jury. There are other circumstances than those we have mentioned bearing upon its proper determination.

To avoid confusion it may be said that the termination of the contract which was the basis of the suit of the defendant against the plaintiff was for the nonpayment of the October instalment and not of the August one. The action brought by the defendant is not directly involved. We have made reference to it as explaining the action before us. There was no appeal in the action by the defendant against the plaintiff to recover $215.79. The reversal of the order leaves the case for a new trial.

Order reversed.