DANIEL D. CROWLEY and Others v. BURNS BOILER & MANUFACTURING COMPANY.[1]

February 21, 1907.

Nos. 15,004—(40).

**Harmless Error—New Trial.**

Where incompetent and improper evidence is received over the objections of counsel, a new trial will not be granted therefor, if it appears from the record that the evidence did not prejudice the party objecting.

**Incompetent Evidence—Charge to Jury.**

Whether error in the reception of evidence is cured by an instruction to the jury to disregard the same depends upon the character of the issues and the nature of the evidence.

**Breach of Contract by Seller—Measure of Damages.**

A., having a contract with the village of B. for the delivery and installation of a steam boiler of a specified kind, contracted with C. to manufacture and supply the boiler. C., knowing of the original contract, contracted to furnish the boiler to enable A. to fill such contract with B. C. failed to deliver a proper boiler. The boiler which C. agreed to furnish could not be purchased in the open market, but A. found and purchased a different kind of boiler, which B. accepted and paid for, as full compliance with the terms of the original contract. In an action by A. against C. to recover damages resulting from the breach of C.'s contract, it is *held*:

(a) Upon the breach of contract by C., A. had the right to abandon his contract with B. and recover as damages from C. the profit lost on such contract with B., or to perform the contract with B. by furnishing a boiler of different make and character which B. was willing to accept as compliance with the original contract.

[1] Reported in 110 N. W. 969.

(b) Having elected to pursue the latter course, the proper measure of damages in the action against C. was the difference between the amount for which C. had contracted to furnish the original boiler and the amount that A. paid for the substituted boiler which was accepted by B. in performance of the original contract, and in addition thereto whatever was properly expended by A. in installing and removing the rejected boiler.

(c) The burden was upon A. to prove what he paid for the substituted boiler.

Action in the district court for St. Louis county to recover $7,500 for a breach of contract. The case was tried before Dibell, J., and a jury, which rendered a verdict in favor of plaintiff for $623.40. From a judgment entered pursuant to the verdict, defendant appealed. Reversed and a new trial granted.

*H. B. Fryberger,* for appellant.

*M. H. McMahon* and *Warner E. Whipple,* for respondents.

ELLIOTT, J. ·

On August 25, 1903, the respondent the Crowley Electric Company entered into a contract with the village of Two Harbors by the terms of which it agreed to furnish material for, and do the work of installing certain parts of an electric light plant for the village. The contract called, among other things, for a certain boiler to be used for the generation of steam with which to run the plant. On September 14, 1903, the appellant, the Burns Boiler & Manufacturing Company, and respondent entered into a contract by which the appellant agreed to sell and deliver, on board the cars at Two Harbors, a boiler to be used by the respondent in filling its contract with the village of Two Harbors for a consideration which was finally fixed at $2,495. This contract provided for the exigency of delay in the delivery of the boiler as follows:

> The date of delivery is named for immediate acceptance only, and is conditioned upon strikes, accidents or other causes beyond our control. There are no understandings or agreement outside this written proposal. · All contracts are subject to the approval of home office.

By subsequent agreement the time for delivery was extended until February 22, 1904.

About February 20, 1904, the respondents' representative went to West De Pere, Wisconsin, where the Burns Company did business, and then learned that the boiler was not completed, and had not been tested as provided for in the contract between the two parties. It seems that new boilers generally leak, and it is always necessary to test them by pressure, thus exposing the leaks so that they can be calked. The original contract provided that,

> Before leaving the place of manufacture, the boiler will be completely filled with water, slightly warmed and subjected to a test pressure of two hundred and twenty-five pounds per square inch, and to be tight at that pressure, and a certificate of inspection and insurance policy for one year furnished.

The Crowley Company, knowing that the boiler had not been tested and that it was leaking badly, nevertheless insisted that it should be shipped immediately, and it was finally agreed that the boiler should be shipped to Two Harbors without being tested. In order to release appellant from liability for failure to make the required test, the parties executed a release as follows:

> Your advised to not hold boiler until inspector arrives, and we hereby authorize you to ship same immediately without insurance representatives inspecting same. The clause in contract asking for test is hereby waived; it being understood, however, that you are to furnish the Crowley Electric Company with insurance policy according to our contract with you.

After the execution of this release the boiler was shipped to Two Harbors and installed as a part of the plant. The village commenced to use the boiler in the latter part of March, 1904; but it leaked badly, and by arrangement the appellant sent a boiler maker to Two Harbors to put it into proper condition. For various reasons, not now material, the boiler was never made to work satisfactorily, and it was finally removed and shipped to the appellant at its works at De Pere, Wisconsin. The respondent then obtained another boiler from other parties, and installed it in place of the one which had been furnished by the appellant.

This action was thereafter brought by the Crowley Company to recover damages alleged to have been caused by the failure of the Burns Company to fulfil its contract. The aggregate damage claimed was made up of various items, which included the loss of profits on the Two Harbors contract, the cost of work and labor expended in making the substitution, and the sum of $400 alleged to have been exacted by the village under the liquidated damage clause of its contract for delay in performance of the contract. The defendant interposed a counterclaim. The jury returned a verdict in favor of the plaintiff for $643.40, upon which the judgment from which this appeal is taken was entered.

The appellant assigns numerous errors, but they require a consideration of but two questions—the effect of the reception of evidence tending to show that the village of Two Harbors exacted penalties for delay in installing the boiler, and the proper measure of damages.

1. The plaintiff offered evidence tending to sustain the allegation of the complaint that the village had exacted $400 as penalty for the delay in installing the boiler. This evidence was received over the objection of the defendant; but at the close of the evidence it appeared that no penalty had in fact been exacted, and the plaintiffs' counsel stated that he desired to withdraw from the consideration of the jury any claim for the penalty alleged to have been imposed and retained by the village by reason of any delay in the delivery of the boiler. To this the defendant's counsel made no objection, and in his charge to the jury the court withdrew the claim for the penalty from the consideration of the jury by the statement that the plaintiff could make no claim for damages because the boiler was not shipped earlier than February 22, 1904. From the amount of the verdict which was returned it is inferable that the jury was in no way influenced by the fact that the claim for the penalty alleged to have been paid was asserted and thereafter withdrawn.

But the appellant contends that, as the evidence was erroneously received, it must under the circumstances have been prejudicial. We have frequently held that the reception of incompetent evidence which the jury is subsequently instructed to disregard is error without prejudice, and therefore not ground for a new trial. This rule applies when

the fact attempted to be proven is established by other evidence, and when the evidence thus erroneously received appears to have had no prejudicial effect upon the minds of the jurors. It is true, as stated in Juergens v. Thom, 39 Minn. 458, 40 N. W. 559, that the reception of incompetent evidence over the persistent objections of counsel is good ground for a new trial, notwithstanding a subsequent instruction to disregard it unless from the whole case it is reasonably clear that the evidence did not prejudice the party so objecting.

The question of prejudice must be determined to a certain extent by the character of the evidence and the nature of the issue to which it is directed. The evidence may be entirely innocuous, or it may be of such an insidious character as to produce inevitably an effect on the minds of the jurors which no conscious exercise of will power can obliterate. This is illustrated by the recent case of State v. Yates, 99 Minn. 461, 109 N. W. 1070. The defendant there was being tried for the crime of arson, and a witness for the state was permitted to testify that the defendant had once suggested to him that he had better burn one of his buildings and thus secure the insurance. The incident had no connection with the matters charged in the indictment, and it requires no argument to convince one that such testimony, which tended to show a condition of mind favorable to arson generally, was prejudicial, and that the prejudice could not be removed by any instruction to the jury to disregard it.

Juergens v. Thom was an action to recover the price of a binder which had been sold with a warranty. The defense was a breach of warranty, and evidence was received over the defendant's objection to show that during the same year other persons had purchased the same kind of binders and that they all failed to work properly. It was held that an instruction to the jury to disregard this evidence did not cure the error. The evidence tended to create prejudice against the binders generally, and the record failed to show with reasonable clearness that the plaintiff was not thereby injuriously affected.

But in the case at bar we are satisfied that no prejudice resulted to the defendant from the course that was pursued. The plaintiff was claiming damages for a breach of contract to deliver a boiler to be used by it in filling a contract with the village of Two Harbors. In the complaint it claimed as one of the items which made up the ag-

gregate of damages the sum of $400 for penalties which had been exacted by the village because of the failure to perform the contract within the time specified.   Under the terms of the contract the village had the right to exact a penalty under certain circumstances, and the evidence which was received over the objection of the defendant tended to show that the village had exercised this right.   But when the evidence was all in it appeared that this was not correct, and the plaintiffs' counsel then withdrew the claim, and the court instructed the jury in effect that nothing could be allowed under this claim in the complaint.   There was nothing in the nature of the demand or in the character of the evidence which in the slightest degree tended to inflame the passions or generate prejudice in the minds of the jurors. The question was as to the amount of damages which could be recovered, and this was determinable, not as a matter of judgment or discretion, where prejudice might play an undiscoverable part, but by mathematical calculation from exact data.

2. The court adopted as the measure of damages which the plaintiffs were entitled to recover the difference between the contract price which the Crowley Company agreed to pay the Burns Company and the amount which the village of Two Harbors agreed to pay the Crowley Company for the boiler, less the reasonable cost of putting the boiler in place in accordance with the contract with the village. The appellant contends that this was error, and that the correct measure of damages was the difference between what the Crowley Company agreed to pay the Burns Company for the boiler and what it actually paid for the boiler which it purchased in the open market and accepted by the village as a substitute in full performance of the original contract.   The proper measure of damages depends upon the nature of the contract between the village and the Crowley Company, whether the Burns Company had notice of this contract and made its contract with reference thereto, and the circumstances of the purchase and acceptance of the substituted boiler.   Grouping the facts about these issues we find that:

(a) In the summer of 1903 the village of Two Harbors advertised for bids for the construction and installation of an electric light and water plant.   The specifications upon which bids were invited, and which were made a part of the contract subsequently entered into,

called for the "furnishing all necessary labor and material for the complete installation of 1–200 H. P. internal fired boiler and accessories," as specified therein in detail.

The Crowley Company submitted a bid in which it proposed to furnish the materials and perform the labor called for by the plans and specifications for the sum of $17,533. This sum was made up of the following items: Engines, etc., $5,700; steam and water piping, etc., $3,200; 200 H. P. internal fired boiler, $4,100; dynamos, etc., $4,533.

This bid was accepted by the village, and on August 25, 1903, a contract was entered into between it and the Crowley Company, by the terms of which the company, for the consideration above stated, subject to such additions for subsequent alterations as might be agreed upon in writing, agreed to "install, erect, and finish, in a good, substantial, expeditious and workmanlike manner, certain changes, improvements and additions to and for the electric light and waterworks plant of and for the village of Two Harbors, agreeable to the plans, drawings, and specifications hereto attached, and the proposals are hereby made a part of this contract." The changes in this contract, made subsequently, are not material to the questions under consideration.

(b) After having secured this contract, it was necessary that the Crowley Company should have the boiler therein called for manufactured. Through the columns of a trade journal the Burns Company learned that the bid of the Crowley Company had been accepted by the village, and it thereupon wrote to the Crowley Company, stating: "We understand that the contract for the electric plant at Two Harbors, Minn., was awarded to you. In this connection we should be pleased to have the opportunity of figuring with you on whatever may be needed in the line of power boilers, stacks, etc."

After some correspondence a representative of the Burns Company went to Duluth, and as the result of the negotiations there carried on a contract was entered into whereby the Burns Company agreed to furnish the Crowley Company with the boiler called for by the specifications upon which the Crowley Company's contract with the village was based. The Burns Company at the time knew of the existence of the contract with the village, and agreed to furnish the

boiler which was to be used by the Crowley Company in the performance of that contract. There was some conflict in the evidence as to whether the Burns Company had full knowledge of the terms of that contract. But it is manifest that it was aware of the existence of the contract, and the purpose for which the boiler was to be used. Its knowledge was sufficient, at least, to enable the Crowley Company under certain conditions to recover the loss of profits to a reasonable amount.

(c) On September 14, 1903, the Crowley Company and the Burns Company entered into a contract by the terms of which the Burns Company agreed to furnish the boiler according to the specifications therein set forth for the sum of $2,385. Subsequent changes were made which brought the contract price up to $2,495. The boiler which this contract called for was an "internal fired" one, of peculiar construction, which had to be manufactured to meet the requirement of the given specification. It was not a "stock" boiler, which could be purchased at any time in the open market.

(d) The Burns boiler, after being installed, proved unsatisfactory, and was rejected by the village and returned to the Burns Company. The Crowley Company then, with the consent of the village, went into the open market and purchased a tubular boiler of stock pattern and different capacity, and installed it in place of the Burns boiler. About thirty days after the work was completed the village council appointed a committee to consider certain matters in issue "between the said village and the said Crowley Electric Company for the furnishing and installing of machinery, etc., in the village of Two Harbors water and light plant." This committee reported that "the contract between the parties above referred to has been fully completed in every respect, except as to the time of completion thereof, and recommends that the said contract work, including the machinery and materials furnished and labor performed thereunder, be approved and accepted as in full compliance with said contract, except as hereinabove specified, for which the above-mentioned penalty has been imposed." The committee then offered the following resolution: "Resolved, that the contract work of the said Crowley Electric Co., above referred to in this its report, be, and is hereby, accepted as in full completion and

performance of said contract between the said village of Two Harbors and the said Crowley Electric Co., bearing date August 25th, 1903."

This report was adopted by the village council on February 27, 1905, and thereafter the balance of the $4,100 due the Crowley Electric Company for the boiler was paid in full. The village thus accepted the substituted boiler from the Crowley Company as full and satisfactory performance of the original contract, and paid therefor the full amount which it had agreed to pay for the Burns Company boiler.

Summarizing these facts, we find that the original contract called for certain labor and materials of the aggregate contract value of $17,533; that the boiler in question constituted one item of material for which the village agreed to pay $4,100; that the Burns Company knew of this contract, and contracted to furnish the Crowley Company with the boiler required to fill its contract with the village, for which it was to receive the sum of $2,495; that the Burns Company failed to perform its contract; that the specified boiler could not be purchased in the open market; that the Crowley Company went into the market and purchased a boiler of different make and design, which was satisfactory to the village, and which it accepted in full performance of the original contract; and that the village paid to the Crowley Company for such substituted boiler the full amount which it had agreed to pay for the boiler called for by the original contract. It does not appear what the Crowley Company paid for the substituted boiler.

Upon these facts the proper measure of damages was the difference between the contract price for the Burns boiler and the amount the Crowley Company paid for the substituted boiler, plus whatever the Crowley Company was required to expend in installing and removing the rejected boiler. Upon recovering this amount, the Crowley Company would have been placed in the same position it would have occupied, had there been no breach of the contract.

The law allows damages to be recovered for the purpose of compensating an injured party. It is fair and just that one who has wrongfully injured another shall make good to him the amount of loss caused by his breach of duty. Except in extraordinary instances,

where on grounds of public policy an injured party is allowed to recover punitive, as well as compensatory, damages, the recovery is strictly limited to an amount which will indemnify against the loss. The injured party is not permitted to profit by the fact that a cause of action has been created in his favor by the wrongful act of another person. Common justice requires that the loss occasioned by the neglect of duty by one person shall fall on that person; but, when the injured party is fully indemnified for his loss, the wrongdoer is absolved from further punishment. If the application of a particular rule for measuring damages to given facts results in more than compensation, it is at once apparent that the wrong rule has been adopted.

In this case, when the Burns Company broke its contract, the Crowley Company had the right to choose between two courses of conduct. There was no open market in which the special kind of boiler which the Burns Company had agreed to supply could be purchased. It knew the purpose for which the boiler was ordered, and, as there was nothing exceptional or unusual in the terms of the contract, the inference is that it contracted with reference to the damages which would result to the Crowley Company from a breach of its contract. Guetzkow v. Andrews, 92 Wis. 214, 66 N. W. 119, 52 L. R. A. 209, 53 Am. St. 909, annotated; Booth v. Spuyten Duyvil, 60 N. Y. 487. The case would then have been within the second portion of the well-known rule of Hadley v. Baxendale, 9 Exch. 341, 5 Eng. Rul. Cas. 502. It is not necessary, in view of the disposition we make of this case, to examine the limitations which have been placed upon that rule. The decisions will be found fully stated and analyzed in Mayne & Lumley Smith on Damages, p. 11, et seq.

The Crowley Company then had the right either to abandon its contract with the village and recover from the Burns Company as damages its loss of profits on the contract with the village, or to perform its contract with the village by purchasing the best substitute obtainable, if the village was willing to accept it, and recover from the Burns Company as damages the difference, if any, between the contract price of the Burns boiler and the amount it was required to pay for the substitute boiler. It adopted the latter course. It was under a legal duty to keep the damages resulting from a breach of the contract with the Burns Company as low as reasonably possible.

The measure of damages for the breach of a contract to sell and deliver an article, when the purchaser can go into the open market and buy the same article, is limited to the difference between the contract price, and the market price of the article at the place of delivery. Todd v. Gamble, 148 N. Y. 382, 42 N. E. 982, 52 L. R. A. 225. When the article cannot be obtained in the open market, some other measure of damages must necessarily be adopted. There seems to have been no market in which the particular kind of boiler called for by the contract could be purchased; but the Crowley Company did not proceed upon this theory. The village was under no obligation to accept a boiler which did not meet all the requirements of the contract; but it was not obliged to hold the Crowley Company to the strict performance of that contract. It desired to have the plant installed, and the Crowley Company was able to go into the open market and find a boiler which was satisfactory to the village, and which it accepted in full performance and satisfaction of the original contract. The testimony does not sustain the respondents' contention that this transaction was entirely separate and distinct from, and formed no part of, the original contract. Having performed its contract with the village by the installation of the substituted boiler, the Crowley Company lost its right to recover damages upon the theory that the original contract had been abandoned. The measure of damages which we have indicated furnishes full compensation to the Crowley Company for the injury occasioned by the breach of the Burns Company's contract, and prevents it from recovering more than compensation. Morris v. Supplee, 208 Pa. St. 255, 57 Atl. 566; Pittsburg v. West Penn, 201 Pa. St. 150, 50 Atl. 935; Theiss v. Weiss, 166 Pa. St. 9, 31 Atl. 63, 45 Am. St. 638. It is the rule which was applied in Hewson-Herzog Supply Co. v. Minnesota Brick Co., 55 Minn. 530, 57 N. W. 129, which in principle controls this case.

3. If the plaintiff had proven that there was no market in which it could purchase a boiler with which it could perform its contract with the village, it would, under the circumstances, have made a prima facie case; and the burden would have been upon the defendant to show the facts in reference to the purchase and installation of a substitute therefor. But, when the plaintiff rested, it had shown that a boiler had been purchased in the open market which the village had ac-

cepted as satisfactory in the performance of the contract. It also appeared that the Crowley Company recovered from the village for the substituted boiler the full amount of money which it was to have received for the Burns boiler. The facts thus disclosed required the application of another rule for measuring the damages. The plaintiff could, upon the evidence, recover only the difference between the contract price and what it paid for the substitute. If it paid less for the substitute than it agreed to pay for the Burns boiler, it was not only not damaged, but was actually benefited by the defendant's breach of contract, unless the costs of the change exceeded the difference in price of the two boilers. The plaintiff was required to prove that it was damaged, and to establish the facts necessary to enable the amount of the damages to be determined by the application of the proper rule. The burden was upon the plaintiff to prove the elements upon which its damages were based, and this required it to show the cost of the substituted boiler. Morris v. Supplee, 208 Pa. St. 253, 57 Atl. 566; Halbert v. Newell (Tex. Civ. App.) 27 S. W. 767.

The judgment from which the appeal is taken is therefore reversed, and a new trial granted.