FRANK M. GROVES v. JOHN WUNDER COMPANY AND OTHERS.[1]

April 21, 1939.

No. 31,916.

[1]Reported in 286 N. W. 235.

164

*John P. Devaney, Louis B. Schwartz,* and *Bleecker & Babcock,* for appellant.

*Fowler, Youngquist, Furber, Taney & Johnson,* for respondent.

STONE, JUSTICE.

Action for breach of contract. Plaintiff got judgment for a little over $15,000. Sorely disappointed by that sum, he appeals.

In August, 1927, S. J. Groves & Sons Company, a corporation (hereinafter mentioned simply as Groves), owned a tract of 24 acres of Minneapolis suburban real estate. It was served or easily could be reached by railroad trackage. It is zoned as heavy industrial property. But for lack of development of the neighborhood its principal value thus far may have been in the deposit of sand and gravel which it carried. The Groves company had a plant on the premises for excavating and screening the gravel. Near by defendant owned and was operating a similar plant.

In August, 1927, Groves and defendant made the involved contract. For the most part it was a lease from Groves, as lessor, to defendant, as lessee; its term seven years. Defendant agreed to remove the sand and gravel and to leave the property "at a uniform grade, substantially the same as the grade now existing at the roadway * * * on said premises, and that in stripping the overburden * * * it will use said overburden for the purpose of maintaining and establishing said grade."

Under the contract defendant got the Groves screening plant. The transfer thereof and the right to remove the sand and gravel made the consideration moving from Groves to defendant, except that defendant incidentally got rid of Groves as a competitor. On defendant's part it paid Groves $105,000. So that from the outset, on Groves' part the contract was executed except for defend-

ant's right to continue using the property for the stated term. (Defendant had a right to renewal which it did not exercise.)

Defendant breached the contract deliberately. It removed from the premises only "the richest and best of the gravel" and wholly failed, according to the findings, "to perform and comply with the terms, conditions, and provisions of said lease * * * with respect to the condition in which the surface of the demised premises was required to be left." Defendant surrendered the premises, not substantially at the grade required by the contract "nor at any uniform grade." Instead, the ground was "broken, rugged, and uneven." Plaintiff sues as assignee and successor in right of Groves.

As the contract was construed below, the finding is that to complete its performance 288,495 cubic yards of overburden would need to be excavated, taken from the premises, and deposited elsewhere. The reasonable cost of doing that was found to be upwards of $60,000. But, if defendant had left the premises at the uniform grade required by the lease, the reasonable value of the property on the determinative date would have been only $12,160. The judgment was for that sum, including interest, thereby nullifying plaintiff's claim that cost of completing the contract rather than difference in value of the land was the measure of damages. The gauge of damage adopted by the decision was the difference between the market value of plaintiff's land in the condition it was when the contract was made and what it would have been if defendant had performed. The one question for us arises upon plaintiff's assertion that he was entitled, not to that difference in value, but to the reasonable cost to him of doing the work called for by the contract which defendant left undone.

■ Defendant's breach of contract was wilful. There was nothing of good faith about it. Hence, that the decision below handsomely rewards bad faith and deliberate breach of contract is obvious. That is not allowable. Here the rule is well settled, and has been since Elliott v. Caldwell, 43 Minn. 357, 45 N. W. 845, 9 L. R. A. 52, that where the contractor wilfully and fraudulently varies from the terms of a construction contract he cannot sue

thereon and have the benefit of the equitable doctrine of substantial performance. That is the rule generally. See Annotation, "Wilful or intentional variation by contractor from terms of contract in regard to material or work as affecting measure of damages." 6 A. L. R. 137.

Jacob & Youngs, Inc. v. Kent, 230 N. Y. 239, 243, 244, 129 N. E. 889, 891, 23 A. L. R. 1429, is typical. It was a case of substantial performance of a building contract. (This case is distinctly the opposite.) Mr. Justice Cardozo, in the course of his opinion, stressed the distinguishing features. "Nowhere," he said, "will change be tolerated, however, if it is so dominant or pervasive as in any real or substantial measure to frustrate the purpose of the contract." Again, "the willful transgressor must accept the penalty of his transgression."

■ In reckoning damages for breach of a building or construction contract, the law aims to give the disappointed promisee, so far as money will do it, what he was promised. (9 Am. Jur., Building and Construction Contracts, § 152.) It is so ruled by a long line of decisions in this state, beginning with Carli v. Seymour, Sabin & Co. 26 Minn. 276, 3 N. W. 348, where the contract was for building a road. There was a breach. Plaintiff was held entitled to recover what it would cost to complete the grading as contemplated by the contract. For our other similar cases, see 2 Dunnell, Minn. Dig. (2 ed. & Supps.) §§ 2561, 2565.

Never before, so far as our decisions show, has it even been suggested that lack of value in the land furnished to the contractor who had bound himself to improve it any escape from the ordinary consequences of a breach of the contract.

A case presently as interesting as any of our own is Sassen v. Haegle, 125 Minn. 441, 147 N. W. 445, 446, 32 L.R.A.(N.S.) 1176. The defendant, lessee of a farm, had agreed to haul and spread manure. He removed it, but spread it elsewhere than on the leased farm. Plaintiff had a verdict, but a new trial was ordered for error in the charge as to the measure of damages. The point was thus discussed by Mr. Justice Holt [125 Minn. 443]:

"But it is also true that the landlord had a perfect right to stipulate as to the disposal of the manure or as to the way in which the farm should be worked, and the tenant cannot evade compliance by showing that the farm became more valuable or fertile by omitting the agreed work or doing other work. Plaintiff's pleading and proof was directed to the reasonable value of performing what defendant agreed but failed to perform. Such reasonable cost or value was the natural and proximate damages. The question is not whether plaintiff made a wise or foolish agreement. He had a right to have it performed as made, and the resulting damage, in case of failure, is the reasonable cost of performance. Whether such performance affects the value of the farm was no concern of defendant."

Even in case of substantial performance in good faith, the resulting defects being remediable, it is error to instruct that the measure of damage is "the difference in value between the house as it was and as it would have been if constructed according to contract." The "correct doctrine" is that the cost of remedying the defect is the "proper" measure of damages. Snider v. Peters Home Bldg. Co. 139 Minn. 413, 414, 416, 167 N. W. 108.

Value of the land (as distinguished from the value of the intended product of the contract, which ordinarily will be equivalent to its reasonable cost) is no proper part of any measure of damages for wilful breach of a building contract. The reason is plain.

The summit from which to reckon damages from trespass to real estate is its actual value at the moment. The owner's only right is to be compensated for the deterioration in value caused by the tort. That is all he has lost.[2] But not so if a contract to improve the same land has been breached by the contractor who refuses to do the work, especially where, as here, he has been paid in advance. The summit from which to reckon damages for that wrong is the hypothetical peak of accomplishment (not value) which would

[2]So also in condemnation cases, where the owner loses nothing of promised contractual performance.

have been reached had the work been done as demanded by the contract.

The owner's right to improve his property is not trammeled by its small value. It is his right to erect thereon structures which will reduce its value. If that be the result, it can be of no aid to any contractor who declines performance. As said long ago in Chamberlain v. Parker, 45 N. Y. 569, 572:

"A man may do what he will with his own, * * * and if he chooses to erect a monument to his caprice or folly on his premises, and employs and pays another to do it, it does not lie with a defendant who has been so employed and paid for building it, to say that his own performance would not be beneficial to the plaintiff."

To the same effect is Restatement, Contracts, § 346, p. 576, Illustrations of Subsection (1), par. 4.

Suppose a contractor were suing the owner for breach of a grading contract such as this. Would any element of value, or lack of it, in the land have any relevance in reckoning damages? Of course not. The contractor would be compensated for what he had lost, i. e., his profit. Conversely, in such a case as this, the owner is entitled to compensation for what he has lost, that is, the work or structure which he has been promised, for which he has paid, and of which he has been deprived by the contractor's breach.

To diminish damages recoverable against him in proportion as there is presently small value in the land would favor the faithless contractor. It would also ignore and so defeat plaintiff's right to contract and build for the future. To justify such a course would require more of the prophetic vision than judges possess. This factor is important when the subject matter is trackage property in the margin of such an area of population and industry as that of the Twin Cities.

For purposes of measuring damages for breach of construction contracts, those with municipal corporations (see City of St. Paul v. Bielenberg, 164 Minn. 72, 204 N. W. 544) are no exception to the general rule. No sound reason is assigned why they should be. We have seen no case indicating their supposed exceptional character

as a factor of decision. If these so-called public contracts were in the suggested special category for measuring damages, a municipal corporation would be dealt with more favorably than the ordinary litigant. But courts cannot be more generous with one class of litigants than with another. Such partiality runs counter to the law's demand for equal treatment of litigants who stand on the same footing both as to right and as to remedy.

The geneology of the error pervading the argument *contra* is easy to trace. It begins with Seely v. Alden, 61 Pa. 302, 100 Am. D. 642, a tort case for pollution of a stream. Resulting depreciation in value of plaintiff's premises, of course, was the measure of damages. About 40 years later, in Bigham v. Wabash-Pittsburg T. Ry. Co. 223 Pa. 106, 72 A. 318, the measure of damages of the earlier tort case was used in one for breach of contract, without comment or explanation to show why. That case was followed in Sweeney v. Lewis Const. Co. 66 Wash. 490, 119 P. 1108, and Sandy Valley & Elkhorn Ry. Co. v. Hughes, 175 Ky. 320, 194 S. W. 344, with no thought given to the anomaly of using in a case in contract a standard ordinarily applicable only in cases of tort. The Washington case, by the way, is *sui generis*. The contract was to waive damages for the lowering of a street grade. So it adopted as matter of express contract the measure of damages applicable in cases of trespass.

It is at least interesting to note Morgan v. Gamble, 230 Pa. 165, 79 A. 410, decided two years after the Bigham case. The doctrine of substantial performance is there correctly stated, but plaintiff was denied its benefit because he had deliberately breached his building contract. It was held that:

"Where a building contractor agrees to lay an extra strong lead water pipe, and he substitutes therefor an iron pipe, he will be required to allow to the owners in a suit upon the contract, not the difference [in value] between the iron and lead pipes, but the cost of laying a lead pipe as provided in the agreement."

To show how remote any factors of value were considered, it was also held that:

"Where a contractor of a building agrees to construct two gas lines, one for natural gas, and one for artificial gas, he will not be relieved from constructing both lines, because artificial gas was not in use in the town in which the building was being constructed."

The objective of this contract of present importance was the improvement of real estate. That makes irrelevant the rules peculiar to damages to chattels, arising from tort or breach of contract. Crowley v. Burns Boiler & Mfg. Co. 100 Minn. 178, 187, 110 N. W. 969, 973, dealt with a breach of contract for the sale of a steam boiler. The court observed:

"If the application of a particular rule for measuring damages to given facts results in more than compensation, it is at once apparent that the wrong rule has been adopted."

That is unquestioned law, but for its correct application there must be ascertainment of the loss for which compensation is to be reckoned. In tort, the thing lost is money value, nothing more. But under a construction contract, the thing lost by a breach such as we have here is a physical structure or accomplishment, a promised and paid for alteration in land. That is the "injury" for which the law gives him compensation. Its only appropriate measure is the cost of performance.

It is suggested that because of little or no value in his land the owner may be unconscionably enriched by such a reckoning. The answer is that there can be no unconscionable enrichment, no advantage upon which the law will frown, when the result is but to give one party to a contract only what the other has promised; particularly where, as here, the delinquent has had full payment for the promised performance.

It is said by the Restatement, Contracts, § 346, Comment b:

"Sometimes defects in a completed structure cannot be physically remedied without tearing down and rebuilding, at a cost that would be imprudent and unreasonable. The law does not require damages to be measured by a method requiring such economic waste. If no such waste is involved, the cost of remedying the defect is the

amount awarded as compensation for failure to render the promised performance."

The "economic waste" declaimed against by the decisions applying that rule has nothing to do with the value in money of the real estate, or even with the product of the contract. The waste avoided is only that which would come from wrecking a physical structure completed, or nearly so, under the contract. The cases applying that rule go no further. Illustrative are Buchholz v. Rosenberg, 163 Wis. 312, 156 N. W. 946; Burmeister v. Wolfgram, 175 Wis. 506, 185 N. W. 517. Absent such waste, as it is in this case, the rule of the Restatement, Contracts, § 346, is that "the cost of remedying the defect is the amount awarded as compensation for failure to render the promised performance." That means that defendants here are liable to plaintiff for the reasonable cost of doing what defendants promised to do and have wilfully declined to do.

It follows that there must be a new trial. The initial question will be as to the proper construction of the contract. Thus far the case has been considered from the standpoint of the construction adopted by plaintiff and acquiesced in, very likely for strategic reasons, by defendants. The question has not been argued here, so we intimate no opinion concerning it, but we put the question whether the contract required removal from the premises of any overburden. The requirement in that respect was that the overburden should be used for the purpose of "establishing and maintaining" the grade. A uniform slope and grade were doubtless required. But whether, if it could not be accomplished without removal and deposit elsewhere of large amounts of overburden, the contract required as a *condition* that the grade everywhere should be as low as the one recited as "now existing at the roadway" is a question for initial consideration below.

The judgment must be reversed with a new trial to follow.

So ordered.

JULIUS J. OLSON, JUSTICE (dissenting).

The situation here is unfortunate to the litigants as well as to this court in that because of the absence of two of the justices the

prevailing opinion represents but a minority of its full membership. But the court as such must go on transacting its business. The general rule is that a "majority of the members of a court is a quorum sufficient for the transaction of business and the decision of cases." Hence a majority of the quorum necessarily must prevail. 14 Am. Jur., Courts, §§ 57, 58; 15 C. J. pp. 965, 966, [§ 362] D; and see Hunt v. Ward, 193 Minn. 168, 258 N. W. 145, 259 N. W. 12.

There is no case directly in point in this state. My own notion has been that to reverse the trial court a clear majority of the whole court was necessary. (And this view has been shared by many of our lawyers judging from petitions for reargument that have recently come before us where the court was evenly divided due to the illness of Mr. Justice Hilton.) This notion of mine was probably unfounded; hence what has been said is not to be taken as in any way disparaging the value and binding effect of the prevailing opinion. One would much rather go along therewith than be opposed thereto if performance of duty as one sees it did not compel otherwise.

The involved lease provides that the granted premises were to be used by defendant "for the purpose of removing the sand and gravel therefrom." The cash consideration was $105,000, plus defendant's covenant to level and grade the premises to a specified base. There was no segregation or allocation of the cash consideration made applicable to any of the various items going into the deal, and the instrument does not suggest any sum as being representative of the cost of performance by defendant of the leveling and grading process. Nor is there any finding that the contractor "wilfully and fraudulently" violated the terms of its contract. All that can be said is that defendant did nothing except to mine the sand and gravel purchased by it and deemed best suited to its own interest and advantage. No question of partial or substantial performance of its covenant is involved since it did nothing in that behalf. The sole question here is whether the rule adopted by the court respecting recoverable damages is wrong. The essential facts, not questioned, are that—

"The fair and reasonable value as of the end of the term of said lease, May 1, 1934, of performing the said work necessary to put the premises in the condition in which they were required by the terms of said lease to be left, is the sum of $60,893.28," and that if defendant "had left said premises at a uniform grade as required by said lease, the fair and reasonable value of said premises on May 1, 1934, would have been the sum of $12,160."

In that sum, plus interest from May 1, 1934, plaintiff was awarded judgment, $15,053.58. His sole contention before the trial court and here is that upon these findings the court, as a matter of law, should have allowed him the cost of performance, $60,893.28, plus interest since date of the breach, May 1, 1934, amounting to more than $76,000.

Since there is no issue of fact, we should limit our inquiry to the single legal problem presented: What amount in money will adequately compensate plaintiff for his loss caused by defendant's failure to render performance?

When the parties entered into this contract each had a right to rely upon the promise of full and complete performance on the part of the other. And by "performance" is meant "such a thorough fulfilment of a duty as puts an end to obligations by leaving nothing more to be done." McGuire v. J. Neils Lbr. Co. 97 Minn. 293, 298, 107 N. W. 130, 132.

But the "obligation of the contract does not inhere or subsist in the agreement itself *proprio vigore,* but in the law applicable to the agreement, that is, in the act of the law in binding the promisor to perform his promise. When it is said that one who enters upon an undertaking assumes the legal duties relating to it, what is really meant is that the law imposes the duties on him. A contract is not a law, nor does it make law. It is the agreement plus the law that makes the ordinary contract an enforceable obligation." 12 Am. Jur., Contracts, § 2.

There is here no room for dispute as to contract obligation; therefore it is the duty of the court to enforce its terms "without a

leaning in either direction," the parties being "on an equal footing" and as such "were free to do what they chose." *Id.* § 226.

Another principle, of universal application, is that a party is entitled to have that for which he contracted, or its equivalent. What that equivalent is depends upon the circumstances of each case. If the effect of performance is such that the defective part "may be remedied without the destruction of any substantial part of the benefit which the owner's property has received by reason of the contractor's work, the equivalent to which the owner is entitled is the cost of making the work conform to the contract." 9 Am. Jur., Building and Construction Contracts, § 152. Here, however, defendant did nothing. As such plaintiff "is entitled to be placed, in so far as this can be done by money, in the same position he would have occupied if the contract had been performed." But "his recovery is limited to the loss he has actually suffered by reason of the breach; he is not entitled to be placed in a better position than he would have been in if the contract had not been broken." 15 Am. Jur., Damages, § 43. The measure of damages "is not affected by the financial condition of the one entitled to the damages"; nor may there be included in the assessment of damages "the motive of the defendant in breaking" his contract, compensatory damages alone being involved. In such a case the measure is "the same whatever the cause of the breach, regardless of whether it was due to mistake, accident, or inability to perform or was wilful and malicious." *Id.* § 48. Liability in damages has for its basis the value of the promised performance to the promisee, not what it would cost the promisor in completing performance. Guardian Trust Co. v. Brothers (Tex. Civ. App.) 59 S. W. (2d) 343, 345, and authorities cited. Plaintiff as the injured party is entitled to have compensation for all injuries sustained by him due to defendant's default. But he is only entitled to recover "actual pecuniary compensation," and this is true "whether the action is on contract or in tort," there being here no circumstances warranting allowance of exemplary damages. 8 R. C. L. § 8, pp. 431, 432, and cases cited under notes 16, 17, and 18.

"Since one who has been injured by the breach of a contract or the commission of a tort is entitled to a just and adequate compensation for such injury and no more, it follows that his recovery must be limited to a fair compensation and indemnity for his injury and loss. And so in no case should the injured party be placed in a better position than he would be in had the wrong not been done, or the contract not been broken. The defendant may therefore show that, notwithstanding his default, the plaintiff has suffered no damages. And if any circumstances exist which mitigate the injury, they must be considered and taken into account." 8 R. C. L. § 9, pp. 434-435, and cases under notes 9, 10, 11, and 12.

That the subject matter here involved was one within the proper scope of contractual obligation, and its purpose entirely lawful, is obvious. Plaintiff, as owner of the tract upon which the work was to be done, had the undoubted right to insist upon that kind of contract and to its performance. We are not concerned with whether he exercised economic wisdom or displayed lack thereof. Defendant agreed to do the work for what is conceded to have been a legally sufficient consideration. It must either perform or pay plaintiff for all damages by him suffered. In City of St. Paul v. Bielenberg, 164 Minn. 72, 74-75, 204 N. W. 544, 545, this court held that:

"The measure of damages for the defendant's breach of his contract by a total failure to perform is the cost of performance. [Citing cases.]

"It is urged by the defendant that his failure to perform his contract has not harmed the city, for, as he claims and as is perhaps true, the grading from Winifred street to George street will not be of use on account of the topography of the vicinity until the avenue is graded to Congress street. The action is on contract. The measure of damages is the contract measure. The plaintiff was entitled to that for which it contracted. It is no defense that it contracted for something which is not now beneficial to it."

Other cases upholding the general rule stated are, amongst many: County of Hennepin v. Richardson, 175 Minn. 60, 220 N. W. 432;

Sampson v. Brince, 146 Minn. 101, 177 N. W. 933; City of Winona v. Jackson, 92 Minn. 453, 100 N. W. 368; Haney v. Ferch, 150 Minn. 323, 185 N. W. 397; Carli v. Seymour, Sabin & Co. 26 Minn. 276, 3 N. W. 348; Frank W. Coy Real Estate Co. v. Pendleton, 45 R. I. 477, 123 A. 562; Day v. City of Malvern, 195 Ark. 804, 114 S. W. (2d) 459, and cases cited in note 39 L.R.A.(N.S.) 591. See also Anderson v. Nordstrom, 60 Minn. 231, 61 N. W. 1132; Sassen v. Haegle, 125 Minn. 441, 147 N. W. 445, 52 L.R.A.(N.S.) 1176; McCormick, Damages, § 169, p. 650.

But, to be noted, in none of the cited cases was it made to appear that the cost of completion or construction would exceed the value of the property as and when completed. Public contracts are in a separate class, and as to these comment will be made later.

As the rule of damages to be applied in any given case has for its purpose compensation, not punishment, we must be ever mindful that, "if the application of a particular rule for measuring damages to given facts results in more than compensation, it is at once apparent that the wrong rule has been adopted." Crowley v. Burns Boiler & Mfg. Co. 100 Minn. 178, 187, 110 N. W. 969, 973.

We have here then a situation where, concededly, if the contract had been performed, plaintiff would have had property worth, in round numbers, no more than $12,000. If he is to be awarded damages in an amount exceeding $60,000 he will be receiving at least 500 per cent more than his property, properly leveled to grade by actual performance, was intrinsically worth when the breach occurred. To so conclude is to give him something far beyond what the parties had in mind or contracted for. There is no showing made, nor any finding suggested, that this property was unique, specially desirable for a particular or personal use, or of special value as to location or future use different from that of other property surrounding it. Under the circumstances here appearing, it seems clear that what the parties contracted for was to put the property in shape for general sale. And the lease contemplates just that, for by the terms thereof defendant agreed "from time to time, as the sand and gravel are removed from the various lots * * * leased, it will surrender said lots to the lessor" if of no further

use to defendant "in connection with the purposes for which this lease is made."

The theory upon which plaintiff relies for application of the cost of performance rule must have for its basis cases where the property or the improvement to be made is unique or personal instead of being of the kind ordinarily governed by market values. His action is one at law for damages, not for specific performance. As there was no affirmative showing of any peculiar fitness of this property to a unique or personal use, the rule to be applied is, I think, the one applied by the court. The cases bearing directly upon this phase so hold. Briefly, the rule here applicable is this: Damages recoverable for breach of a contract to construct is the difference between the market value of the property in the condition it was when delivered to and received by plaintiff and what its market value would have been if defendant had fully complied with its terms. Bigham v. Wabash-Pittsburg T. Ry. Co. 223 Pa. 106, 72 A. 318; Sweeney v. Lewis Const. Co. 66 Wash. 490, 119 P. 1108; Sandy Valley & Elkhorn Ry. Co. v. Hughes, 175 Ky. 320, 194 S. W. 344. It is interesting to note that in the Kentucky case the court reversed its former opinion found in 172 Ky. 65, 188 S. W. 894. Its reason for changing its mind is thus stated (175 Ky. 320-321):

"In our original opinion we fixed as the measure of damages the reasonable cost of reducing the land from which the earth and stone were taken to the level of the railroad grade and in condition for building purposes. Upon a reconsideration of the question, we conclude that this measure of damages is incorrect. From plaintiffs' avowal on the first trial it appears that it would cost at least $15,000.00 to do the work required by the contract, and from other testimony in the record it is by no means improbable that the cost would be far in excess of that sum. If this be true, the cost would far exceed the market value of the entire farm. If the contract had been performed, plaintiff would have had a farm with the place from which the earth and stone were taken reduced to the level of the railroad grade and in condition for building purposes. As the case stands, this provision of the contract has not been complied

with. What, then, was plaintiff's damage? *Manifestly, not what it would cost to do the work, for, if the work had been done, plaintiff would not have received the cost of the work, but would have been benefited only to the extent that the work increased the market value of his land.* We, therefore, conclude that the measure of damages is the difference between the market value of the farm in its present condition and what its market value would have been if the land from which the earth and stone were removed had been reduced to the level of the railroad grade and left in condition for building purposes." (Italics supplied.)

The principle for which I contend is not novel in construction contract cases. It is well stated in McCormick, Damages, § 168, pp. 648, 649, as follows:

"In whatever way the issue arises, the generally approved standards for measuring the owner's loss from defects in the work are two: First, in cases where the defect is one that can be repaired or cured without undue expense, so as to make the building conform to the agreed plan, then the owner recovers such amount as he has reasonably expended, or will reasonably have to spend, to remedy the defect. Second, if, on the other hand, the defect in material or construction is one that cannot be remedied without an expenditure for reconstruction disproportionate to the end to be attained, or without endangering unduly other parts of the building, then the damages will be measured not by the cost of remedying the defect, but by the difference between the value of the building as it is and what it would have been worth if it had been built in conformity with the contract."

And the same thought was expressed by Mr. Justice Cardozo in Jacob & Youngs, Inc. v. Kent, 230 N. Y. 239, 244, 129 N. E. 889, 891, 23 A. L. R. 1429, 1433, thus:

"The owner is entitled to the money which will permit him to complete, unless the cost of completion is grossly and unfairly out of proportion to the good to be attained. When that is true, the measure is the difference in value."

To the same effect is 5 Williston, Contracts (Rev. ed.) § 1363, p. 3825. (The supporting cases are found under note 12.) In Restatement, Contracts, § 346, p. 576, Illustrations of Subsection (1), par. 3, reads:

"A contracts with B to sink an oil well on A's own land adjacent to the land of B, for development and exploration purposes. Other exploration wells prove that there is no oil in that region; and A breaks his promise to sink the well. B can get judgment for only nominal damages, not the cost of sinking the well."

And in Guardian Trust Co. v. Brothers (Tex. Civ. App.) 59 S. W. (2d) 343, 346, a case in substance much like ours, the court said:

"The loss or injury actually sustained by the obligee, rather than the cost of performance by the obligor, is the proper measure of damages for the breach of a contract. When that well-established rule is departed from, compensatory damages become either punitive damages, because too much, or inadequate damages, because too little, and the fundamental purpose of compensatory damages is lost sight of."

In Pedelty v. Wisconsin Zinc Co. 148 Wis. 245, 247, 252, 134 N. W. 356, 358, defendant contracted with plaintiffs for the privilege of—

"pumping and running waste water from their mine" across plaintiffs' land. "In the course of defendant's operations it caused waste material from the mill to pass with water in which it was held in suspense, into a small pond from which, from time to time, it caused the water and settlings, called 'sludge,' to flow to and the sludge to be deposited in great quantities on plaintiffs' land."

The court stated the rule to be:

"The diminished value of the land by reason of the wrong, was the proper basis for the assessment [of damages]. The cost of removing the foreign material, which appellant insists was the proper measure, was in fact evidentiary only. *A situation might*

*well be created such that the cost of restoration would exceed the value of the property originally, or as restored. In that case it could not be well said that such cost would be the measure of recoverable loss. The actual loss sustained is the just measure of reparation in any case."* (Italics supplied.)

If this were a case to recover damages for tortious injury the applicable rule is the difference in the market value and not the cost of restoring the premises to the former condition if such exceeds the diminution in value. Karst v. St. P. S. & T. F. R. Co. 23 Minn. 401; Ziebarth v. Nye, 42 Minn. 541, 547, 44 N. W. 1027. In Heath v. M. St. P. & S. S. M. Ry. Co. 126 Minn. 470, 475, 148 N. W. 311, 312, L. R. A. 1916E, 977, it was held that:

"The rental value plus the cost of restoration is the true measure of damages, in cases of continuing trespass, when it appears that this is less than the difference between the value of the premises before and immediately after the wrong."

Other helpful cases are Elder v. Lykens Valley Coal Co. 157 Pa. 490, 27 A. 545, 37 A. S. R. 742; Harvey v. Sides Silver Mining Co. 1 Nev. 539, 90 Am. D. 510; Jones v. Gooday, 8 M. & W. 146; Annotation, 35 A. L. R. 1142, "III. Basis of computation," where numerous cases are cited to the effect that, "the true measure of damages for a reparable injury is the cost of repairs, if such cost is not greater than the diminution in value of the premises." Additional cases may be found under annotation, 17 L. R. A. 426; Armstrong v. City of Seattle, 180 Wash. 39, 38 P. (2d) 377, 97 A. L. R. 826 (annotation at p. 830). In Karst v. St. P. S. & T. F. R. Co. 22 Minn. 118, 123, this court said:

"For unlawful excavation and removal of his soil, a party is entitled to recover, not the cost of refilling, but the amount of the diminution of the value of the property by the excavation and removal, that being the amount of the injury directly resulting from the acts complained of."

And is not that the most feasible measure in such a situation? It accomplishes the object to which damage law is directed, *i. e.,*

toward full recompense to an injured plaintiff for his loss. If, then, the landowner received full compensation by this measure, why is he not also fully compensated by receiving the same amount in the case before us? Once it has been held that the market value wholly restores the landowner when his property is permanently damaged, it must be held that he is also entirely repaid by the same measure in our present situation. So it would seem that whether plaintiff's damages are to be measured by the rule applicable to the theory of breach of contract cases or that of tortious conduct the extent of his recovery can be no greater than his actual loss. In either case he may not be heard to complain that because the equivalent to defendant's performance will cost a larger amount than that, therefore he should receive such greater amount rather than his real loss.

Some comment is in order respecting cases cited in the prevailing opinion. Too much stress is laid upon Morgan v. Gamble, 230 Pa. 165, 79 A. 410, the implication being that this case in some fashion limits or impairs Bigham v. Wabash-Pittsburg T. Ry. Co. 223 Pa. 106, 72 A. 318. A careful reading of the two opinions dispels any notion of lack of complete harmony between them. In the Gamble case the contractor had agreed to place two gas lines in a building, one for natural, the other for artificial, gas. He failed to lay the gas line for the latter because only natural gas was available when the building was being erected. The trial court deemed the important question to be that of whether the contractor had substantially performed. On appeal the court was of the opinion that (230 Pa. 174-175, 79 A. 413-414)—

"over and beyond the question of substantial performance is whether the contract was complied with to the satisfaction of the owner. * * * The contract provides that the contractor shall furnish all the materials and perform all the work to the satisfaction of the owner. We have uniformly upheld such contracts and required their observance. Under a contract of that character it is the duty of the contractor to perform to the satisfaction of the owner, and that is the standard by which the sufficiency of the

work is to be tested. It is not for the court or the jury to determine whether the work is being done in compliance therewith, but solely for the owner to determine, and with his decision the contractor must comply." Of course the court limited the owner's dissatisfaction to something not "prompted by caprice or bad faith or for the purpose of evading payment of the balance due the contractor. If the objections made by the owner are bona fide and not unreasonable or capricious they must be sustained."

Nothing whatever was said in any way limiting the rule laid down in the former case. Chamberlain v. Parker, 45 N. Y. 569, 572, 573, is also cited. There defendant had failed to drill a well, and suit to recover cost of performance promptly followed.

*"The point* to be considered," said the court, *"is, whether the plaintiff in any sense,* actual or legal, *has lost by the default of the defendant a sum equal to the expense of digging the well."* (Italics supplied.)

A verdict for plaintiff for $2,700 was reversed on appeal because (*Id.* 574) "plaintiff was, upon the proof given, entitled to nominal damages only," and "judgment absolute" was ordered for defendant. Sassen v. Haegle, 125 Minn. 441, 147 N. W. 445, 446, 52 L.R.A.(N.S.) 1176, is also much emphasized. The record there is:

Defendant had entered into a farm lease under the terms of which he "promised and agreed not to remove any straw or manure from said farm, but to spread upon said premises all manure made thereon." Plaintiff's claim for damages was stated in his complaint to be "that said manure and the spreading thereof was reasonably worth and of the value of" $93.75, and in that sum sought recovery under his first cause of action. Defendant's answer admitted "that he did haul from said premises during the term of said lease twenty loads of manure. But he alleges that during the time he occupied said premises he hauled upon said premises and fed thereon a large amount of feed raised upon other lands. And that from said feed manure was made to a much greater extent and in amount than was hauled by this defendant from said premises. And that the

plaintiff suffered no damage thereby." The testimony for plaintiff was: "Q. What was that manure and the spreading of it upon the land reasonably worth? A. About $93.00 or $94.00, I thought, the spreading and hauling [to be worth]."

What this court was considering here was necessarily based upon the record before it. There is nothing in the facts in that case upon which plaintiff can build anything at all helpful to his contentions. The futility of quoting from any opinion without reference to the facts upon which it is based is here clearly apparent. Compare Meisch v. Safranski, 147 Minn. 122, 124, 179 N. W. 685, where defendant tenant had failed to fall-plow a certain part of the rented farm. The court said:

"The damage from the failure to plow was not permanent nor recurrent. The land had a use or rental value for 1919, though not plowed in the fall of 1918. The difference between that value and the value if plowed in 1918 measured plaintiff's loss. We are accustomed to measure damages by comparing rental values in cases not dissimilar in principle. (Citing cases.) A correct measure of damages results in just compensation. That adopted, properly applied, does."

No one doubts that a party may contract for the doing of anything he may choose to have done (assuming what is to be done is not unlawful) "although the thing to be produced had no marketable value." (45 N. Y. 572.) In Restatement, Contracts, § 346, pp. 576, 577, Illustrations of Subsection (1), par. 4, the same thought is thus stated:

"A contracts to construct a monumental fountain in B's yard for $5,000, but abandons the work after the foundation has been laid and $2,800 has been paid by B. The contemplated fountain is so ugly that it would decrease the number of possible buyers of the place. The cost of completing the fountain would be $4,000. B can get judgment for $1,800, the cost of completion less the part of price unpaid."

But that is not what plaintiff's predecessor in interest contracted for. Such a provision might well have been made, but the parties did not. They could undoubtedly have provided for liquidated damages for nonperformance (2 Dunnell, Minn. Dig. [2 ed. & Supps.] §§ 2536, 2537), or they might have determined in money what the value of performance was considered to be and thereby have contractually provided a measure for failure of performance.

The opinion also suggests that this property lies in an area where the owner might rightly look for future development, being in a so-called industrial zone, and that as such he should be privileged to so hold it. This he may of course do. But let us assume that on May 1, 1934, condemnation to acquire this area had so far progressed as to leave only the question of price (market value) undetermined; that the area had been graded in strict conformity with the contract but that the actual market value of the premises was only $12,160, as found by the court and acquiesced in by plaintiff, what would the measure of his damages be? Obviously, the limit of his recovery could be no more than the then market value of his property. In that sum he has been paid with interest and costs; and he still has the fee title to the premises, something he would not possess if there had been condemnation. In what manner has plaintiff been hurt beyond the damages awarded? As to him "economic waste" is not apparent. Assume that defendant abandoned the entire project without taking a single yard of gravel therefrom but left the premises as they were when the lease was made, could plaintiff recover damages upon the basis here established? The trouble with the prevailing opinion is that here plaintiff's loss is not made the basis for the amount of his recovery but rather what it would cost the defendant. No case has been decided upon that basis until now. Plaintiff asserts that he knows of no rule "giving a different measure of damages for public contracts and for private contracts in case of nonperformance." It seems to me there is a clear distinction to be drawn with respect to the application of the rule for recoverable damages in case of breach of a public works contract from that applicable to contracts between private parties. The construction of a public building, a sewer,

drainage ditch, highway, or other public work, permits of no application of the market value doctrine. There simply is and can be no "market value" as to such. And for this cogent reason there can be but one rule of damages to apply, that of cost of completion of the thing contracted to be done. I think the judgment should be affirmed.

HOLT, JUSTICE.
I join in the foregoing dissent.

MR. JUSTICE HILTON, being incapacitated by illness, took no part.

MR. JUSTICE LORING took no part.