**P. G. LAKE, INC., Appellant,**

v.

**J. M. SHEFFIELD et al., Appellees.**

**No. 415.**

Court of Civil Appeals of Texas.

Tyler.

Feb. 20, 1969.

Rehearing Denied March 27, 1969.

Ramey, Ramey & Neal, Jack G. Neal, Sulphur Springs, for appellant.

Smith, Johnson & McDowell, William McDowell, Howard S. Smith, Sulphur Springs, for appellees.

MOORE, Justice.

This is an action for breach of a contract. Plaintiffs, J. M. Sheffield, Jack D. Sheffield, and Lola Browning, brought suit against defendant, P. G. Lake, Inc., alleging that on or about July 11, 1958, they executed an oil and gas lease to Pan American Petroleum Corporation covering a 41.7 acre tract of land situated in Hopkins County, Texas; that said lease was subsequently assigned to defendant, P. G. Lake,

Inc., who entered upon the land for the purpose of drilling an oil well on May 12, 1967. Plaintiffs alleged that prior to the entry, they entered into an oral agreement with the defendant whereby it was agreed that in the event the well was dry, defendant would, as soon as the drilling rig was moved out, remove all clay from roadway and location used for drilling the well, and would fill and level the pits and re-seed the area with grass. They further alleged that in preparation for the drilling of the well, defendant built a two-foot elevated clay road across plaintiffs' land for a distance of 900 feet in length and 24 feet in width and also constructed several clay slush pits five to six feet deep. It was also alleged that the defendant placed a large amount of clay in and around the well site; that when the well was found to be dry, defendant moved off the premises without restoring the same as it promised to do; that although requested to do so, defendant refused to restore the premises as promised. The prayer was for the reasonable cost of repairs in the amount of $4,200.00.

Plaintiffs' petition also asserted a cause of action for negligence and for using more land than was reasonably necessary, but these claims were taken out of the case by instructed verdict.

Defendant denied generally the allegations in plaintiffs' petition; however, defendant admitted by its pleadings that it had agreed with plaintiff, J. M. Sheffield, that in the event the well was dry, it would remove a "part" of the clay, spread the remainder thereof, fill in and level the pits, and re-seed the area where the clay had been.

Trial was before a jury. In response to Special Issue No. 1, the jury found that the defendant agreed to restore the land to its original condition by removing all clay; filling and leveling the slush pits; and re-seeding the area. In response to Special Issue No. 2, the jury found that the reasonable cost of removing all clay from the road and location site, filling and leveling the pits, and re-seeding the area was the sum of $3,000.00. Judgment was entered on the verdict in favor of the plaintiffs for such sum and defendant duly perfected this appeal.

A copy of the lease was offered in evidence. It provides that the premises were leased and granted "for the purpose of investigating, exploring, prospecting, drilling and mining for and producing oil, gas and all other minerals, lay pipe lines, building roads, tanks, power stations, telephone lines and other structures thereon to produce, save, take care of, treat, transport and own said products, * * *."

Plaintiffs offered evidence of the alleged oral agreement to repair the leased premises in the event the well was non-productive, as well as evidence showing the reasonable cost of restoring the land. Defendant offered testimony pertaining to its version of the oral agreement and also introduced proof showing the reasonable cost of restoring the land in accordance with its version of the contract. Neither party alleged nor sought to prove the value of the plaintiffs' lands before or after defendant's entry.

By the first four Points of Error, defendant asserts that the court erred in submitting, over its objection, Special Issue No. 2 inquiring as to the cost of repairs, because same did not constitute the proper measure of damages. Defendant asserts that the proof conclusively shows that the injury to the land was permanent and therefore the proper measure of damages was the difference between the market value of plaintiffs' land before and after defendant's entry. Based on this premise, defendant asserts that the trial court erred in refusing its motion for instructed verdict, as well as its motion for judgment notwithstanding the verdict, because defendant failed to sustain the burden of proof by failing to show a diminution of market value. Despite the lack of proof showing market value of the land, defend-

ant nevertheless argues that to allow plaintiffs to recover the sum of $3,000.00 for restoring the land would be unfair and unjust because such sum would exceed the market value of the three acres of land which defendant used in building the road and drilling the well.

The question of the proper measure of damages to be applied where a mining lessee agrees to repair and restore the land to its former condition has been the subject of much controversy and division of opinion as shown by the opinions in the case of Peevyhouse v. Garland Coal & Mining Company (Okl.), 382 P.2d 109, certiorari denied 375 U.S. 906, 84 S.Ct. 196, 11 L. Ed.2d 145, and the case of Groves v. John Wunder Company, 205 Minn. 163, 286 N. W. 235, 123 A.L.R. 502.

■ The case of Peevyhouse v. Garland Coal & Mining Company, supra, involved a mining lease wherein the lessee agreed to repair the leased premises at the expiration of the lease. The cause was submitted to the jury with instructions to find the reasonable cost of repairs and also to find the diminution in value of plaintiffs' land because of the non-performance. The jury found the reasonable cost of repairs to be $5,000.00 and found the diminution of the plaintiffs' lands amounted to only $300.00. The trial court entered judgment for the lesser amount, or $300.00. In affirming the judgment, the court said:

"* * * the measure of damages in an action by lessor against lessee for damages for breach of contract is ordinarily the reasonable cost of performance of the work; however, where the contract provision breached was merely incidental to the main purpose in view, and where the economic benefit which would result to lessor by full performance of the work is grossly disproportionate to the cost of performance, the damages which lessor may recover are limited to the diminution in value resulting to the premises because of the non-performance."

There seems to be no decided case in this jurisdiction setting forth the measure of damages in a situation where an oil and gas lessee breaches his contract to repair the leased premises. We believe the rule announced by the Oklahoma Supreme Court is sound and finds application to the facts presented here.

It is generally recognized that a difference exists between the theory governing the award of damages for breach of contract and for tort. 17 Tex.Jur.2d, page 127, Sec. 50.

In discussing the measure of damages for breach of contract, the Supreme Court of this state in the case of Stewart v. Basey, 150 Tex. 666, 245 S.W.2d 484, said:

"* * * The universal rule for measuring damages for the breach of a contract is just compensation for the loss or damage actually sustained. By the operation of that rule a party generally should be awarded neither less nor more than his actual damages. A party has no right to have a court enforce a stipulation which violates the principle underlying that rule. In those cases in which courts enforce stipulations of the parties as a measure of damages for the breach of covenants, the principle of just compensation is not abandoned and another principle substituted therefor. What courts really do in those cases is to permit the parties to estimate in advance the amount of damages, provided they adhere to the principle of just compensation. * * *"

In cases involving the breach of building and construction contracts, it is generally held that if the defects in the construction can be repaired without impairing the building as a whole, the cost of repair is the measure of damages; but where the defect cannot be remedied without an expenditure disproportionate to the end to be

attained and would result in economic waste, the measure is the difference between the value of the building as constructed and the value it would have had if constructed according to the contract. 10 Tex.Jur.2d 65, Sec. 57; Hutson v. Chambless, 157 Tex. 193, 300 S.W.2d 943; Totten v. Houghton (Tex.Civ.App.), 2 S.W.2d 530, n. w. h.; Restatement of the Law of Contracts, Sec. 346.

█ Thus we think it may be said that as a general rule, all the cases seem to recognize the rule that the measure of damages for breach of contract is the reasonable cost of expected performance. 17 Tex.Jur.2d, p. 127, Sec. 51. At the same time, the majority also recognizes that the rule is not without exception.

While we are inclined to follow the rule announced in *Peevyhouse,* we have concluded that the trial court did not err in refusing to apply such rule under the circumstances presented here, because as we see it, the case goes off upon the question of who had the burden of proof under the rule. Therefore, the ultimate question before us is whether the plaintiffs had the burden of pleading and proving, not only the cost of repairs but also the diminution in value of the land under the ordinary rule that plaintiff has the burden of showing what damages he has suffered, or whether the defendant had the burden of showing the "cost" rule was inapplicable because it would allow plaintiffs to recover a greater amount of damages than they actually sustained in that the cost of performance would exceed the diminution in the market value of the land.

█ Corbin on Contracts, Volume 5, page 485, Sec. 1089, states that in contracts of building and construction the cost of repair theory prevails "if this is possible and does not involve unreasonable economic waste." The author goes on to say, at page 488, "Without question, the contract breaker should pay the cost of construction and completion in accordance with his contract unless he proves affirmatively and convincingly that such construction and completion would involve an unreasonable economic waste." Applying the same rule to the facts of this case, we think it may be stated that where the contract breaker seeks to avoid the reasonable cost of performance, he must plead and prove facts showing that if the cost of performance rule is applied, such cost would grossly exceed the diminution in value of the plaintiffs' land and would result in awarding plaintiffs a sum in excess of their actual damages, thus allowing the plaintiffs to profit from the breach. This merely follows the general rule that any circumstance which tends to defeat or diminish the damages may be considered in measuring the damages for breach of contract. 22 Am.Jur.2d, page 282, Sec. 203.

█ The minimization of damages is a defensive matter. If the defendant desires to avail himself of such defense, the burden rests upon him to raise such issue by pleadings and proof. Phelps v. Connellee (Tex.Com.App.), 285 S.W. 1047 and authorities; Stolz v. Wells (Tex.Civ.App.), 43 S.W.2d 163; Copeland v. Hill (Tex. Civ.App.), 126 S.W.2d 567. Having failed to plead or prove facts showing that the cost of performance would exceed plaintiffs' actual damages in that it would exceed the diminution in the market value of the land, defendant waived its right to complain of the measure of damages adopted by the court. Rules 277, 279, Texas Rules of Civil Procedure. Points 1 through 4 are overruled.

By other points of error, defendant challenges the judgment on the ground that there is no evidence to support the jury's finding upon Special Issue No. 1 and alternatively, that the jury's finding on said issue is against the overwhelming weight and preponderance of the evidence.

█ The sole basis of the dispute in this respect is whether defendant agreed to re-

move "all" of the clay, or whether it agreed to remove "some" of the clay and spread the remainder. Plaintiffs offered testimony to the effect that the defendant agreed to remove "all" of the clay. The agents of the defendant denied this and testified that the company only agreed to remove some of the clay and spread the remainder. The jury accepted the plaintiffs' version of the agreement. It is well settled that where the testimony is conflicting, the jury is the final arbiter of the facts and their findings will not be disturbed on appeal. The rule is so well established that citation of authorities is not necessary.

After having weighed all the evidence, both that in favor of the judgment and that which is contrary thereto, we find that we are not in accord with the contention that the jury's finding on Special Issue No. 1 is against the overwhelming weight and preponderance of the evidence.

The judgment of the trial court is affirmed.